## ATLANTIC COAST LINE RAILROAD CO. v. JONES.

1. The court did not err in admitting in evidence the schedule of wages for enginemen and the time-table. This evidence was material, and should have been submitted to the jury for their consideration in their endeavors to fix the amount of damages allowable in the case.

2. The excerpt from the rule-book of the company, containing an explanation of the meaning of certain "signs," was admissible to contradict the oral testimony of certain witnesses who had given evidence touching the meaning of those signs.

3. The court did not, for any reason assigned, err in charging the jury as follows: "But if you should, on that question, decide that the company was liable, why then you would consider the other question as to the amount of damages that ought to be awarded the plaintiff as compensation for the life of her husband." Other portions of the

charge to the jury show clearly that, by the expression "compensation for the life of her husband," the court meant compensation for the value in money of his life, his capacity to earn, actual and prospective, being taken into consideration.

4. There was no error, under the facts of the case, in charging the jury as follows: "The plaintiff makes a prima facie case for recovery when she shows you, from the evidence, that her husband, Charles J. Jones, was free from fault, and that his death was caused by the defendant or by its agents or employees engaged in the service of the defendant at the time the injuries were inflicted which caused his death." Under the facts of this case the jury could not have been left under the impression that the plaintiff would have made out a prima facie case, "by showing negligence of agents and employees of defendant, whose negligence was not complained of in plaintiff's petition." Nor did the court, by the use of the words "when she shows you," etc., express or intimate an opinion, on the part of the court, to the effect that the plaintiff had shown that her husband was free from fault. The word "when," as here used, has, as is frequently the case, a conditional or hypothetical meaning.

5. The court did not err in charging, that "Whenever it is shown you by evidence that the plaintiff's husband [the deceased] was free from fault and was not guilty of any negligence, . . that . . contributed to the cause of his death, then the burden would be shifted;" and that in establishing one of the two defenses open to it the defendant would be required to do so by a preponderance of the evidence.

6. Under the evidence in the case the court did not err in giving the following charge to the jury: "If you believe that the plaintiff makes out that kind of a prima facie case, then the burden would be shifted to the defendant to show that he, the plaintiff's husband, was not without fault, that he was negligent, or that the defendant and its employees exercised and used all ordinary care and diligence to prevent the injury."

7. Inaccuracies in a portion of the charge excepted to will not work a reversal, when it appears from an examination of the entire charge that they were harmless.

8. Considering the very broad, though somewhat indefinite, allegations of negligence in the petition, and that evidence was admitted without objection, relative to the failure of the engineer on the switch-engine to blow the whistle and stop the switch-engine at a given point, where such precautions should have been observed, the court did not err in including, as a part of the statement of the contentions of the plaintiff, a reference to the acts of negligence just referred to.

9. There is no merit in the assignment of error on the charge of the court to the effect that the jury might consider "who the witnesses are, . . their manner of giving in their testimony; the character of the statements made by any particular witness or witnesses." The last clause in this charge is not equivalent to charging the jury that they might consider the "character of the witnesses;" and it did not authorize the jury "to give their personal knowledge of or acquaintance with the witnesses" weight in passing upon the credibility of the witnesses.

10. Evidence having been actually introduced to establish a certain fact, it was not error for the court to so state to the jury.

11. The charge of the court in reference to the use of the mortality and annuity tables was not open to the objection urged.

12. The criticism upon the charge as a whole raises no question for decision here, being too general in its character.

13. Failure upon the part of the court to define such expressions as "ordinary and reasonable care and diligence," and "preponderance of the evidence," there being no written request to instruct the jury as to the meaning of those expressions, is not error.

14. The court did not abuse his discretion in refusing to grant a mistrial, insisted on by counsel for the defendant company because of remarks made by counsel for plaintiff in the course of argument.

15. There was sufficient evidence to authorize the verdict.

Argued April 6, 1908.—Decided February 24, 1909.

Action for damages. Before Judge Spence. Decatur superior court. October 5, 1907.

*Bennet & Conyers* and *Pope & Bennet,* for plaintiff in error.

*Joseph H. Hall, Warren Roberts, B. B. Bower Jr.,* and *W. M. Harrell,* contra.

BECK, J. The plaintiff is the widow of Charles J. Jones. She sued to recover damages for his death, alleged to have been caused by the negligence of the employees of the defendant company. He was in the employment of the defendant as a locomotive engineer, and was running on the division of its road that extends from Thomasville to Montgomery. The locomotive he was running was pulling an extra freight-train, designated as No. 708. At the time, the movements of his train were controlled by the train dispatcher at Dothan, Ala., a station between Thomasville and Montgomery. On the morning of the day of his death he received an order that his train would run extra between Thomasville and Climax, Climax being the first station west of Bainbridge. At Climax he received a second order that his train would run extra between Climax and Iron City, with the instruction that he would look out for work-trains. He did so, and reached Bainbridge on this order, arriving in Bainbridge at or about 11 o'clock a. m. He stopped his train in Bainbridge at the usual place, after placing two cars on the side-track, which left him some 32 cars in his train. The conductor of this train registered the time of arrival at 11.15, and leaving time at 11.20. The operator at Bainbridge changed the time of leaving, as registered by the conductor, from 11.20 to 11.24. Between the depot at Bainbridge and the drawbridge over Flint

river, a distance of less than a mile, the engine of plaintiff's husband collided with a train of cars that were being pushed by a switch-engine. At the time of the collision the deceased was in his place on his engine, looking out the window, and the conductor was on the seat of the fireman, on the opposite side from plaintiff's husband, keeping a lookout from that window, there being a curve at that point. The fireman and conductor leaped from the engine just before the collision took place; the engineer remained at his post, and was killed. The evidence as to the giving of signals and the rate of speed and observing other precautionary measures, upon the part of the deceased and the engineer on the switch-engine, was conflicting, there being both direct testimony and evidence of certain physical facts to illustrate this question, both from the standpoint of the company and the plaintiff. Certain rules of the company were introduced in evidence, and there was testimony as to the distance from Bainbridge to stations beyond that point. There was much other and conflicting evidence upon the issue of fact as to whether the deceased was violating a rule of the defendant company at the time of the collision. The jury returned a verdict in favor of the plaintiff. The defendant moved for a new trial, and excepts to the judgment overruling the motion.

1. The court below, over the objection of the defendant, admitted in evidence, in the trial of the case, the following evidence offered by the plaintiff: "Atlantic Coast Line Railroad Company. Schedule of wages for enginemen of main-line tracks, and rules relating thereto, in effect April 1st, 1905. For running passenger-trains, 3.25 cents per mile. For running express-trains, consisting entirely of express-cars, 3.25 cents per mile. For running express-trains, consisting of express and freight-cars, 4 cents per mile. For running through freight-trains, 4.25 cents per mile. For running mixed trains, that is, trains which consist of freight-cars and passenger-equipment cars, when such trains contain three or more freight-cars, 4.25 cents per mile will be paid. When such trains contain less than three freight-cars, 3.25 cents per mile will be paid." And "Atlantic Coast Line Time Table No. 3.— Effective May 28th, 1905," containing the schedule of freight-trains, third class, Nos. 208 and 212, showing schedule time from Thomasville to Montgomery, twelve hours. Error is assigned upon these rulings. It seems clear, however, that the court properly ad-

mitted this evidence, because it furnished certain data which might be of use to the jury in their endeavors to ascertain the amount of damages that should be allowed in the case. While part of the "schedule of wages for enginemen" may have been irrelevant, part of it was relevant and material; and objection having been made to the evidence as a whole, the court did not err in overruling the objection. If it were true, as is insisted by counsel for the defendant company, that it was not practical or possible for an engineer to make the run with freight-trains as frequently as the time-table would indicate, that was a matter of defense, which might have been established by competent evidence. Whether or not it was possible for an engineer to make the run between the two points designated in this time-table, as often as the table itself would seem to indicate, was a question for the jury. Under the evidence the table itself indicates that the run between those points might be made by an engineer daily. If, because of the physical strain entailed by the making of such a run, an engineer could not endure it for more than 12 or 14 days in each month, that might have been shown as a matter of defense; and in fact the defendant did introduce evidence tending to establish this defensive fact. Just what weight should have been given to that evidence was for determination by the jury. It was opinion evidence, and the jury, in determining its effect, had the right to look to all the facts and circumstances proved. The evidence objected to was legitimately before them for their consideration.

2. In view of the fact that the witness Denham, introduced by the defendant, had testified that "The passing tracks on this schedule from Bainbridge to Iron City are indicated by the letter 'P' put opposite each station; and where the letter 'P' is put, that means a passing track; where it does not appear, you can not use it for a passing track by all conductors and engineers. The difference between a track marked 'P' and one put down without being marked 'P' is, one is a business track for cars to stand on and used for business, while the one marked 'P' is kept open for the purpose of passing trains, kept clear of all cars," the court properly overruled the defendant's objection to that portion of the company's rule-book which the plaintiff offered in evidence. The excerpt from the rule-book objected to contains rule No. 6, which reads as follows: "The following signs when placed before

13

the figures of the schedule indicate: 'S' regular stop; 'F' flag-stop to receive or discharge passengers or freight; 'P' stop for meals; 'A' arrive." The rule last referred to was properly before the jury for consideration, in determining whether or not the witness Denham's explanation or interpretation of the meaning of the letter 'P,' where it appears on the schedule or time table, was correct.

3. The court charged the jury as follows: "But if you should, on that question, decide that the company was liable, why then you would consider the other question as to the amount of damages that ought to be awarded the plaintiff as compensation for the life of her husband." Plaintiff in error contends that this charge was error: (*a*) "Because it gave the jury an improper and erroneous rule by which to estimate the amount of damages that plaintiff would be entitled to recover in said case, if entitled to recover at all." (*b*) "Because movant insists by said charge the court instructed the jury that plaintiff, if entitled to recover, would be entitled to such an amount as would compensate her for the loss of the companionship of her husband, when she was entitled to recover only the financial value of his life earnings, or capacity to earn, if he had not been killed." Even if the excerpt from the charge just set forth be open to the criticism upon it here made, the defect in the charge was entirely remedied by other portions in the charge, where it appears clearly that the jury could not possibly have misunderstood the court, and that the expression, "compensation for the life of her husband," meant compensation for the value of the life of the deceased, as measured and fixed by his earning capacity, actual and prospective.

4. The next portion of the charge complained of by plaintiff in error is as follows: "The plaintiff makes a prima facie case for recovery when she shows you, from the evidence, that her husband, Charles J. Jones, was free from fault, and that his death was caused by the defendant, or by its agents or employees engaged in the service of the defendant at the time the injuries were inflicted which caused his death." It is insisted that this charge was error: (*a*) "Because the jury was thereby instructed that defendant would, prima facie, be entitled to recover for her husband's death caused by any of the agents and employees engaged in the service of the defendant, whether or not such employees were engaged in the operation of the switch-engine and cars, by whose neg-

ligence it was alleged in plaintiff's petition her husband's homicide was caused." (b) "Because, by said charge, the jury was instructed that plaintiff could make out a prima facie case by showing negligence of agents and employees of defendant, whose negligence was not complained of in plaintiff's petition." (c) "Because the use of the words 'when she shows you,' etc., amounts to an expression or an intimation of an opinion of the court to the effect that plaintiff *had* shown that her husband was free from fault, and that his death was caused by the defendant or its employees." The charge might have been more accurately adapted to the case if it had limited the inquiry of the jury into the negligence to that alleged in the petition to have been chargeable to the employees engaged in the operation of the switch-engine; but inasmuch as all the testimony, relating to negligence on the part of the coemployees of the deceased, related solely to the negligence on the part of the employees whose negligence was alleged to have been the cause of the death of plaintiff's husband, the defendant in the case was not injured by the charge as given. Nor is the charge open to the criticism that it contains an expression or intimation of an opinion on the part of the court as to what had been proved, because of the employment of the words "when she shows you," etc. The use of the word "when," in this connection has a hypothetical or conditional meaning. "An instruction to disregard the testimony of a witness 'when it is successfully proven that his reputation or general moral character is bad' is equivalent to 'if it be successfully proven.'" State v. Haberle, 72 Iowa, 140 (33 N. W. 461). The word *when* is frequently employed as equivalent to the word *if*, in legislative enactments. 8 Words & Phrases Judicially Defined, 7437. And, in common speech, too, the word *when* is frequently used as equivalent to the word *if*.

5. Another ground of the motion for a new trial contains exceptions to the following charge of the court: "But whenever it is shown you by evidence that the plaintiff's husband was free from fault and was not guilty of any negligence, directly or indirectly, that in any degree contributed to the causes which produced his death, then the burden would be shifted and the presumption of negligence on the part of the defendant company would arise, and it would then be called upon by the preponderance of the testimony to prove either one of the two propositions stated to you

above, that is, that the plaintiff's husband was himself negligent, or that the defendant railroad company and its employees exercised and used all ordinary and reasonable care and diligence in regard to the allegations of negligence set out in the plaintiff's petition." It is insisted that this charge excluded from the consideration of the jury one of the theories relied upon by the defendant, to wit, that neither the engineer of the extra train, 708, nor the engineer and crew in charge of the switch-engine with which it collided were at fault, and that the collision was an unavoidable accident. There was no evidence from which the jury could have found that the collision was an unavoidable accident. Somebody must have been at fault, and the question for the jury to determine was, who was guilty of negligence; and they should have been permitted to go directly into that question, without having their attention distracted by the consideration of the impossible theory that the death of the plaintiff's husband was the result of an accident. The other exceptions to this charge raise the point that it imposed upon defendant a burden different from and greater than that which the law imposes, and, in effect, instructed the jury that the defendant would be required to rebut a prima facie case when it was made out by preponderance of the evidence. Plainly the instructions under consideration were to the effect that in case the jury should find from the evidence that the plaintiff's husband was free from fault and was not guilty of any negligence which contributed "to the causes which produced his death," then the burden would be shifted, and the company, in order to defeat recovery, would have to overcome the prima facie case of the plaintiff by a preponderance of the testimony to establish either one of the two defenses open to it; and the court has to decide whether or not the task set before the defendant was the equivalent of the burden imposed by law. In the case of the *Georgia Railroad* v. *Bryans,* 77 *Ga.* 429, it was said: "There was certainly evidence that the plaintiff did not bring about this injury by his fault or negligence; and this being proved, the *onus* was shifted on the company to show that its agents were in the exercise of all ordinary and reasonable care and diligence, otherwise the statutory presumption of negligence would be against them." "The *onus* is upon him [the plaintiff, an employee] to show himself without fault; so soon as he does that, the presump-

tion arises that the other employees engaged with him in the duty were at fault or negligent, and the *onus* is shifted upon the company to show them without negligence." *Central Railroad & Banking Co.* v. *Kelly,* 58 *Ga.* 107. "A concise statement of the rule as to the burden of proof in cases of this character is, that proof that a deceased employee of a railroad company, who was killed by the running of its train, was without fault, raises a presumption that the company was in fault, and proof that the servants of the company who were operating the train were in fault puts upon the company the burden of showing that the deceased himself was negligent." *Augusta Southern Railroad Co.* v. *McDade,* 105 *Ga.* 134 (31 S. E. 420). Under these decisions, the court did not err in instructing the jury that when the plaintiff showed himself free from fault he had made a primà facie case, and that the burden of proof was then shifted to the defendant company; and when that burden was thus shifted to the defendant, it could only be successfully carried by establishing the defense relied upon by a preponderance of the evidence. In the case of *Cleghorn* v. *Janes,* 68 *Ga.* 87, it appears, from the statement of facts, that the trial court charged the jury that: "In all cases where the burden is upon a party, he must remove that burden by a preponderance of proof. Two witnesses of equal credibility swearing, the one one way and the other the reverse, does not remove the burden. So in this case, if Cleghorn swears the relinquishment was made, and Janes swears it was not made, if both are equally credible and unimpeached, the relinquishment is not legally proved." While this charge was disapproved because of the unqualified statement of the rule contained in the last two sentences quoted, the court approved the charge as to the remainder of it. And in *Lanier* v. *Huguley,* 91 *Ga.* 791 (18 S. E. 39), it was said: "The party upon whom the law casts the burden of proof can not make out his case or defense by evidence which simply raises a doubt as to the matter in issue or leaves the proof equally balanced in the minds of the jury." If the cases which we have cited above are correct in their statements of the rule which we now have under consideration, the charge of the court below upon this point was not erroneous and did not impose upon the defendant any greater burden than that cast upon it by the law.

6. The court charged the jury as follows: "If you believe

that the plaintiff makes out that kind of a prima facie case, then the burden would be shifted to the defendant to show that he, the plaintiff's husband, was not without fault, that he was negligent, or that the defendant and its employees exercised and used all ordinary care and diligence to prevent the injury." Plaintiff in error excepts to this portion of the charge, on the ground that it excluded from the jury the theory of the defense, that the collision between the switch-engine and the cars pushed by it, with the engine of the freight train, was an accident. This contention is disposed of in the fifth division of this opinion.

. 7. The motion for a new trial complains of the following charge: "If you believe, gentlemen, that a preponderance of the testimony in this case submitted to you, a preponderance of the best testimony, shows to you that plaintiff's husband did violate this rule of the company in pulling his train at too great a rate of speed, as contended for by the defendant, that he failed to exercise that caution and prudence that the rules of the company required that he should, and that the failure contributed . to his death, then I charge you that the company would not be liable— he would not be free from fault, and you should not find for the plaintiff in this case." While the expression "preponderance of the best testimony" was neither apt nor accurate, we do not think that the inaccuracy should work a reversal in this case. The court probably meant, by the use of that expression, that they were to determine whether a certain fact had been shown by a preponderance of the testimony, testing the evidence by the credibility of the witnesses and by the weight which should be attached to their evidence. Giving this construction to the expression, it was not erroneous; and if this construction is not placed upon the expression, we do not know in what sense the words were used. But we do not think that the jury could have put upon the words a meaning injurious to the defendant, especially as in other portions of his instructions the court charged them in language calculated to impress upon them that they were to make a verdict based upon the whole case as developed by the evidence submitted for their consideration, stating to them, to quote the judge's own language, "If you should find from the evidence submitted to you, under the law given you by the court, that the company is not liable, or if you should find that the plaintiff has failed to show

liability on the part of the company by a preponderance of the testimony, then your duty would end there, and you would return a verdict in favor of the defendant." And again, in the charge, the court said to the jury, "On the question of liability, gentlemen, I charge you that, before the plaintiff can recover, it must appear from the evidence that her husband did not, by his negligence, contribute to the accident which caused his death. He must have been free from fault. That is, he must not have been guilty of any negligence contributing to the causes which produced his death. In other words, he must have been free from fault or negligence." And still again, in the charge, the court employs similar language, saying, "You take the case, gentlemen, and consider the evidence carefully, and see whether, under the rules of law which I have given you in charge, whether the defendant company is liable for the death of the plaintiff's husband." And in still another portion of the charge the jury are given such cautionary instructions, as follows: "You should find your verdict in accordance with what you honestly believe to be the truth of the case, without regard to whether it is in favor of the plaintiff or the defendant. You are here to administer justice, based upon the truth of the case, under the law; the truth of the case as you find it from the evidence."

It is insisted, also, that the portion of the charge complained of in the ground of the motion for a new trial now under consideration was error on the further ground, among others, that it in effect placed on the defendant the burden of proving, not only that plaintiff's husband violated the rule referred to, but also that such violation contributed to his death, whereas the correct rule of law was, that, when defendant proved that plaintiff's husband violated the rule of the defendant, the burden was on the plaintiff to show that such violation did not contribute to her husband's death. It would seem that the charge last quoted inferentially states the proposition in effect as it is insisted to be, in the criticism upon this charge, but in a subsequent portion of the charge the court positively and without ambiguity, and without leaving room for inference, stated the rule upon this point as clearly as could be desired by the defendant, using the following language: "Before an employee can recover from a railroad company he must be free from fault; and if he is guilty, while in the discharge of his

duty, of disobedience to a rule of the railroad company, to a rule or rules of the railroad company, his widow can not recover, unless it appear that such disobedience did not directly or indirectly contribute in any degree to the injury. If an employee disobey a reasonable rule given either for the protection or information of the company or the employee, the burden is upon the plaintiff to show that such disobedience did not directly or indirectly contribute to the injury."

8. Another ground of the motion for a new trial complains of the following charge of the court: "They insist, that the death of plaintiff's husband was the result of the failure in the defendant and its employees in charge of this switch-engine and cars pushed by it to exercise ordinary care and diligence in operating that train; that the plaintiff's husband was not negligent; that the company was guilty of negligence, through its employees who had charge of the switch-engine, in operating that switch-engine, rushing it on the track at a high rate of speed and not giving any signal at the bridge; and plaintiff insists that that was the cause of his death. You take the contentions of the plaintiff, gentlemen, and the railroad both, on that point, and determine from the evidence which is right." This charge is excepted to on the ground that it was not authorized by any allegations in the plaintiff's petition. The allegations in the petition as to the negligence are not definite nor specific. The only allegation of negligence, upon the part of the defendant, is the sixth paragraph of the petition, and it is as follows: "That said injuries were caused entirely by the negligence of said company, in causing or permitting said engine with said cars in front of the same to come into said engine on which your petitioner's husband was, at that time, engaged in his work." On the trial of the case the plaintiff introduced evidence tending to show negligence and a violation of the rules of the company, on the part of the engineer of the switch-engine, in failing to blow at the bridge and in failing to stop before crossing the bridge. That testimony was a part of the plaintiff's case, showing himself free from negligence; and the fact that the court included, in his statement of the contentions of the parties, the contention of the plaintiff as to the failure of the employees of the defendant to blow the whistle at the bridge, and their failure to stop at the bridge as required by the rules, was not error.

9.   The court charged the jury that they might consider "who the witnesses are that testify; their manner of giving in their testimony; the character of the statements made by any particular witness or witnesses, whether it is consistent or contradictory within itself, whether it is supported or contradicted by other witnesses." This charge was not objectionable on the ground that it instructed the jury "to consider the character of the witnesses who testified in the case." To instruct the jury that they might consider the "character of a witness's statement" is quite different from instructing the jury that they might consider the "character of the witnesses." The jury could not have been misled by this charge into believing that they were authorized, in considering the evidence from the several witnesses, "to give their personal knowledge of or acquaintance with the witnesses weight, and determine that such witnesses as they knew were entitled to more credit, and their evidence to greater weight than the testimony of equally reliable witnesses with whom they had no personal acquaintance."

10.   Evidence having been produced as to the age of the plaintiff and his life expectancy, and other evidence from which the jury could have found the probable amount of his annual earnings, it was not objectionable for the court to charge the jury, in effect, that evidence had been introduced as to what was the value of the life of the deceased. Such a charge did not fall within the inhibition contained in the statute against an expression or intimation by the court as to what had been proved.

11.   The charge of the court in reference to the use of the mortality and annuity tables was not open to the objection urged against it.

12.   The complaint that "the entire charge of the court lacked the explicitness required for the proper instruction of the jury, and failed to point out to the jury, with sufficient particularity, the effect of proving, or failing to prove, the various issues in evidence, and the effect of carrying, of failing to carry, the burden of proof upon various separate issues," is without merit.

13.   Failure upon the part of the court to define such expressions as "ordinary and reasonable care and diligence" and "preponderance of the evidence," there being no written request to instruct the jury as to the meaning of those expressions, is not error.

14. Counsel for the defendant company objected to a portion of the argument of counsel for the plaintiff, and moved the court to withdraw the case from the jury and declare a mistrial, upon the following grounds: "(*a*) There was no evidence to authorize such argument. (*b*) That the statements were of prejudicial matter not in evidence. (*c*) Because said language was improper, inflammatory, irrelevant, and tended to prejudice defendant's rights." And error is assigned upon the overruling of the motion to declare a mistrial. The remarks objected to were as follows: "Gentlemen of the jury, let me remind you of the fact that when the noble soul of Happy Jones, plaintiff's husband, left his body and took its flight to the God who gave it, it left him at his post of duty, where he sacrificed his life, not in an effort to save lives of others, but in a successful effort to save this defendant railroad company thousands of dollars from loss in the destruction of its cars and other property. Yet they say he was guilty of negligence in so doing." There was evidence from which the jury could have found that the deceased, in the face of imminent peril, remained at his post of duty—reversed the lever that controlled the engine, in an endeavor to avert the catastrophe that followed. And we do not think that the allusion to those facts, in the argument of the case, was so irrelevant or inflammatory as to work a reversal and require the setting aside of the verdict. Some flights of eloquence, the introduction of some touches of pathos in the discussion of a tragedy, by zealous counsel, is allowable, provided there is no violation of the rule against the discussion of facts not in evidence, or which are not inferable from the sworn testimony in the case. *Western & Atlantic R. Co.* v. *York,* 128 *Ga.* 687 (58 S. E. 183). Besides, such questions as this are largely addressed to the discretion of the trial judge, in whose presence the argument was made, and who sees and can judge of the demeanor of counsel in making his argument. What we here say disposes also of the complaints urged in the ground of the motion immediately following that last referred to.

15. The evidence was sufficient to authorize the verdict, and in amount it is not so great as to show bias and prejudice upon the part of the jury against the defendant.

*Judgment affirmed. All the Justices concur.*