(159 App. Div. 437.)

### CLARKE v. WOOP.

(Supreme Court, Appellate Division, Second Department.   December 5, 1913.)

1. MUNICIPAL CORPORATIONS (§ 702\*)—USE OF STREETS—LAW OF ROAD.
     A bicyclist is subject to the general rule of the law of the road.
     [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 702.\*]

2. MUNICIPAL CORPORATIONS (§ 702\*)—USE OF STREET—LAW OF ROAD.
     A motor car on a public highway is governed by the rules applicable to other vehicles on a public highway.
     [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 702.\*]

3. MUNICIPAL CORPORATIONS (§ 706\*)—USE OF STREET—COLLISION—EVIDENCE.
     Evidence, in an action for injuries to a boy on a bicycle by colliding with an automobile, *held* to show that the boy approached the automobile on the wrong side of the road.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518;  Dec. Dig. § 706.\*]

4. MUNICIPAL CORPORATIONS (§ 706\*)—USE OF STREET—COLLISION.
     The fact that a vehicle is on the wrong side of the road when a collision occurs raises a presumption of negligence, though the use of the wrong side may be justified by the particular circumstances.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518;  Dec. Dig. § 706.\*]

5. MUNICIPAL CORPORATIONS (§ 706\*)—USE OF STREET—COLLISION—EVIDENCE —CONTRIBUTORY NEGLIGENCE.
     Evidence, in an action for injuries to a boy bicyclist by collision with an automobile, *held* not to show that the boy was free from contributory negligence in going on the wrong side of the road.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518;  Dec. Dig. § 706.\*]

6. MUNICIPAL CORPORATIONS (§ 706\*)—USE OF STREET—COLLISION—CONCLUSIONS—NEGLIGENCE.
     Evidence, in an action for injury to a boy while on a bicycle by colliding with defendant's automobile, *held* not to show negligence by defendant in turning toward the left side of the road to avoid a collision.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518;  Dec. Dig. § 706.\*]

7. MUNICIPAL CORPORATIONS (§ 705\*)—USE OF STREET—COLLISION—NEGLIGENCE.
     Defendant, who was an experienced automobile driver and was ascending a steep incline at a moderate speed of from 8 to 10 miles an hour, was not bound to stop upon approaching a boy on a bicycle on the wrong side of the road; the boy having a clear view of the car and being able to take the opposite side of the road.
     [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517;  Dec. Dig. § 705.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Westchester County.

Action by Richard J. Clarke, as administrator of Richard J. Clarke, Jr., against William Woop. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

Edgar L. Ryder, of New York City, for appellant.

Murray G. Jenkins, of New York City (Douglas J. Miller, of New York City, on the brief), for respondent.

JENKS, P. J. In Croton avenue in the village of Ossining, the plaintiff's son, 12 years old, riding a bicycle to the west, came to collision with the defendant's motor car traveling to the east, and was killed. The plaintiff complained of negligent driving and gained the verdict. I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event.

[1, 2] A cyclist is subject to the general rule of the road (Shearman & Redfield on Negligence [6th Ed.] Street, § 653), and the movement of a motor car is governed generally by rules applicable to other vehicles (Mark v. Fritsch, 195 N. Y. 282, 88 N. E. 380, 22 L. R. A. [N. S.] 632, 133 Am. St. Rep. 800). The plaintiff's version is that the lad was riding on "his right-hand side" of the road; that the defendant crossed from his right side of the road. The version of the defendant is that he was driving on his right side of the road; that the lad approached the motor car upon his wrong side of the road; and that the defendant turned his car to his left only when he thought that collision was imminent, to avoid collision and to afford a wider space between his right hand and the curb, for the lad to pass on the side that he seemed bent upon, but that at that instant the lad suddenly turned to his right so that the vehicles collided. Of the five witnesses called by the plaintiff upon this feature of the case who testify to the contrary, four did not see the accident; of these, one saw nothing of the lad before it, and one testifies that the lad was on the left-hand side coming down and on the same side as the ascending motor car, which was on the right-hand side going up. Beside the defendant, his wife, and other members of his family who were in the motor car, nine witnesses testify for the defendant that the lad approached the car upon his wrong side of the road. These witnesses, as well as those called by the plaintiff, were apparently respectable, intelligent people, and wholly indifferent to the parties, save the brother of the lad and defendant's witness Tillotson, who was his friend and a passenger in the car. The point of view of the accident, of the defendant's witnesses, was superior to that of the witnesses called by the plaintiff; or at least their attention was directed more sharply to it.

[3] I think that the preponderance of the evidence shows that the lad approached close to the motor car, and from some distance, upon his wrong side of the road.

[4] The circumstance that a vehicle is on the wrong side of the road is sufficient to raise a presumption of negligence. Thomas on

Negligence, p. 2346; Shearman & Redfield, supra, § 649. And a violation of the law of the road is competent on the question of due care. Nadeau v. Sawyer, 73 N. H. 70, 59 Atl. 369. True, it is also well settled that the use of the wrong side of the road may be justified by the circumstances. Text-books, supra. Indeed, it is said in Shearman & Redfield, supra, with reference to the manager of a vehicle:

"Nor is he even justified in a rigid adherence to his side, if by going a little on the other side he could avoid a collision," citing authorities, inter alia, O'Maley v. Dorn, 7 Wis. 236, 73 Am. Dec. 403; Turley v. Thomas, 8 Carr. & P. 103.

See, too, Huddy on Automobiles, 91.

But the plaintiff's intestate was not within the limitation, for the preponderant evidence is that he approached the motor car on his wrong side of the road when there was no obstacle to a course upon the other side or to his turning into that side at any time, and that he continued his course with the motor car in plain view and without heed until an instant before collision.

[5] I think, then, that the plaintiff did not offer proof sufficient to show the absence of.contributory negligence on the part of a lad who was an experienced rider. Pick v. Thurston, 25 R. I. 36, 54 Atl. 600, cited in Shearman & Redfield, supra, § 653, note.

The learned counsel for the respondent contends that the jury could have found from the evidence that the defendant was on the left-hand side of the road at the time of the collision. This is true; but such finding, so far as it was justified by the evidence, could not import that the defendant was traveling for any space or for any considerable time upon his wrong side of the road and, so far as justified, is consistent with the preponderant proof that the defendant diverted his course from his right side of the road towards the wrong side in view of the approach of the lad, and that within a moment the collision followed. In other words, the jury would not have been justified in finding otherwise than that the defendant originally bore his course upon his right side of the road and almost at the instant of the collision first turned towards the wrong side. Thus, even if the location of the car at the instant of the accident unexplained raised a presumption of negligence, I think that the presumption was lifted by evidence that explained such location, and that the defendant was entitled to invoke the limitation to the law of the road that I have stated. His testimony that he veered his course after his signals were apparently unavailing to avoid a threatened collision is supported by some of the witnesses. Thus the witness Lane testifies:

"The car turned across to give the boy the road, and he didn't take it; he then attempted to take where he should have been. If the car had kept its course, its regular course, I expect it would have struck the boy. * * * If he kept on his course and the car on its course, they would have come head on."

It seems to me that in the face of imminent peril the defendant attempted to avoid it, but that he encountered it because the lad too late sought the course that he should have taken and kept from the outset.

[6] Even if the defendant erred in judgment in this crisis, I fail to find proof of his negligence in his driving of the car.

[7] But the learned counsel for the respondent contends that the defendant was negligent because he did not stop his car. I do not agree. The defendant was an experienced driver ascending a steep incline at a speed described by a witness for the plaintiff as "moderate" and by the defendant and other witnesses as not in excess of eight or ten miles an hour. The evidence indicates that the lad saw the car, and that there was nothing at any time to obscure his view, to divert his attention, or to prevent his taking his way to the right of the car, or even to turning in that direction as he approached for passage. Under these circumstances, the defendant in the exercise of due care was not bound to bring his motor car to a standstill. The verdict is not satisfactory either as to the contributory negligence or the negligence.

The judgment and order are reversed, and a new trial is granted; costs to abide the event. All concur.