[No. 11566.　Department Two.　March 9, 1914.]

C. B. LLOYD, *Respondent*, v. A. P. CALHOUN, *Appellant*.[1]

HIGHWAYS—ACTION FOR DAMAGES—COLLISION—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY. In an action for damages resulting from an automobile collision, when the plaintiff turned to the left under the belief that otherwise the defendant would run him down, the negligence of the defendant, and the contributory negligence of the plaintiff, and whether plaintiff's failure to obey the law of the road' was the proximate cause of the accident, are questions for the jury, where it appears that the accident occurred in the open country, where there were numerous worn paths suitable for automobile travel; that the plaintiff was traveling about 20 miles an hour, on the right-hand side of the road when he first saw defendant, kept turning to the right, until within three feet of a line of telegraph poles; that the defendant was approaching at 35 or 40 miles an hour, in the center of the road, and kept turning to the left, until headed directly for the plaintiff and until within 60 or 75 feet distant, when plaintiff suddenly turned to the left in an effort to get out of the way, and would thereby have avoided a collision if defendant had not immediately thereafter turned to the right (CROW, C. J., and MORRIS, J., dissenting).

SAME—ACTION FOR DAMAGES—INSTRUCTIONS—LAW OF THE ROAD. In an action for damages resulting from an automobile collision, when the plaintiff turned to the left under the belief that it was the only way to avoid a collision, the jury are properly instructed that he would not necessarily be guilty of contributory negligence if he acted as an ordinarily careful and prudent person would, under like circumstances, in failing to obey the law of the road.

[1]Reported in 139 Pac. 231.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered June 30, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Will H. Thompson, Hayden & Langhorne,* and *F. D. Metzger,* for appellant.

*Leo. & Flaskett,* for respondent.

PARKER, J.—The plaintiff and defendant seek to recover, each from the other, damages resulting from a collision of their automobiles. The plaintiff, by his complaint, claims damages in the sum of $1,325 for injury to his automobile; while defendant, by his answer and cross-complaint, claims damages in the sum of $2,900 for injuries to his automobile and to his person, each resting his claim upon the alleged negligence of the other. A trial before the court and a jury resulted in verdict and judgment in favor of the plaintiff for the sum of $925, from which the defendant has appealed.

The principal contention of counsel for appellant is that the trial court erred in denying his motion for judgment notwithstanding the verdict, made upon the ground that the evidence was insufficient to sustain the verdict, and that the trial court should have so decided as a matter of law. There was no challenge to the sufficiency of evidence before the rendition of the verdict. We will, therefore, notice the facts as bearing upon the proper answer to this contention. The collision here involved occurred on the Pacific Highway, some twelve miles southwesterly from Tacoma. At this place, the highway runs westerly across a level, open country, is unfenced, ungraded and undefined upon the ground except by tracks worn by vehicles. The traveled portion of the highway so indicated at this place is some fifty feet in width, with some intervening grass plots which have not been traveled upon. The particular traveled track upon which respondent and appellant were driving their automobiles just

prior to the time of the accident is some nineteen feet wide. While there were possibly some portions of this nineteen feet somewhat smoother than others, it is apparent that over its whole width it was well worn and well suited for travel by automobiles and other vehicles.

Some five hundred feet to the west of the place of collision, the road turns to the right and passes through a clump of fir trees, beyond which a person approaching from the east, along the highway, would not be able to see until within a very short distance of the trees. A line of telephone poles is set along the northerly edge of this nineteen foot track, some six feet therefrom. These poles are set 126 feet apart. The collision occurred some forty or fifty feet to the west of one of these poles, that is, respondent's automobile ran approximately that distance after passing the pole. The ground immediately to the north of the traveled way is smooth prairie, though not as suitable for travel by vehicles as the worn roadway.

During the evening of July 23, 1910, while it was still daylight, respondent was driving his automobile westerly along this portion of the highway at a speed of approximately twenty miles an hour, near the middle of the traveled portion of the nineteen foot track, somewhat nearer the northerly side thereof, which would be on his right. When he reached a point some seven hundred feet from the clump of fir trees through which the highway curves to the right, he saw appellant's automobile near the trees, coming along the road towards him at a high rate of speed, estimated by disinterested witnesses at from thirty to thirty-five miles an hour. As to respondent's version of what occurred immediately thereafter, we quote from the abstract of the evidence made by counsel for appellant, with certain corrections therein made from the statement of facts, which we have italicized, as follows:

"I noticed an automobile swinging around the curve 600 or 700 feet from me. It was on the Pacific Highway road, the same road I was traveling. The first thing I noticed was

the car was traveling very fast. I saw it bound up, I should judge about two feet high; the speed caused it to bound. There was a depression there in the ground consisting of the short water course. As it had passed over that course it bounded two feet or better. I learned afterwards that Dr. Calhoun and Dr. Ireland were in the car. Dr. Calhoun was driving. I was about 600 to 800 feet from them when I first noticed their approach. Calhoun maintained the same rate of speed from the time I saw him up to about the time the machines came together, when I suppose he tried to stop. He was traveling over the road from one and one-half to two times as fast as I was going. He was running his machine from thirty to thirty-five miles an hour. I was on the right hand side of the road. When his car approached I swung a little nearer to the right of the highway, which brought me about six feet from the edge of the road. When I first observed Dr. Calhoun's car he was in the middle of the Pacific Highway, and after I started to swing from the middle over to my side of the road he kept gradually curving to his left, *and if he had kept in his direction he would have left the Pacific Highway on my side of the road entirely.* Dr. Calhoun's car swung from the middle of the road over to my side of the road." . . .

"When he swung over to my side of the road I moved my car over three feet closer to this edge of the road as he approached running along my side of the road to his left I simply let my car run straight along here, because there was no use for me to run off this side of the road. I saw finally that there was nothing for me to do to avoid a collision except to turn to my left, which I did. *If he had kept the exact direction he was taking, I would have passed him there.* But after I turned to my left, he turned to the right, and then I knew we were going to have a collision, and I started to brake my car so that he would not strike me square in the middle; I kept my car pointed out to the left as much as I could and allowed him to run into me. I was traveling when I first saw Calhoun, at approximately 20 miles an hour. When I turned to the left I was within 60 or 75 feet of him. I began to turn right there (indicating on the map the dotted lines). If we had continued in our course, he traveling at thirty miles an hour and me at twenty miles, we would have come together in about a second and a half.

. . . I was about 200 feet away from the point of the collision when I first saw Calhoun, traveling about 20 miles an hour, and continued to travel 20 miles and hour until I swung to the right. . . I knew it was my duty to turn to the right to avoid a collision; but the telephone poles prevented me from turning to the right. That was not the only reason why I didn't turn to the right. The other reason was I would have run into their automobile."

These last remarks of respondent in his testimony manifestly had reference to his view of the situation as it appeared to him at the time. It now seems that he would not have run into appellant's automobile by turning to the right, in view of appellant's finally turning to the right. This version of what occurred at the time is corroborated, in substance, by a witness who was riding with respondent at the time, who testified, among other things, as follows:

"When I first sighted Dr. Calhoun he was about 600 feet away. . . . We were going about 20 miles and he was coming towards us I should judge about 35 to 40 miles an hour. When I first sighted him he was coming out of the little ravine, and when his machine came up from it it bounced considerably and that is what drew my attention to it. Mr. Lloyd kept veering to the right all the time. We were in the middle of the road when we first saw them, the right hand road. Mr. Lloyd kept veering to the right until he was about six feet from the right hand side of the road and Mr. Calhoun kept bearing to the left all the time. When we were about fifty or sixty feet from him, I should judge, I would not say for sure, Mr. Lloyd turned quick to the left, and when we were about ten or twelve feet from the time he turned there Dr. Calhoun turned quick. . . . He kept veering to the left until we were within about sixty feet of each other. . . . If he had kept on coming in the direction we thought, he would have missed our car altogether. Q. You may state to the jury whether or not Calhoun by any action on his part or movement of his machine indicated any purpose or intention on his part to turn to the right after Lloyd had turned to the left. A. No occasion at all; kept coming to the left all the time."

It seems to us that the evidence was sufficient to warrant the jury in believing that appellant was negligent in proceeding at an excessive rate of speed, in running to the north side of the road, and in not seasonably turning to the right upon approaching respondent. Clearly, the evidence furnishes ample room for difference of opinion upon the question of appellant's negligence in each of these particulars.

It is strenuously insisted that, in any event, respondent's negligence was the real proximate cause of the accident. We are unable to so decide as a matter of law. In view of the testimony tending to show appellant's excessive rate of speed, his running to the north side of the road, which would be to his left, his late turning to the right as he approached respondent, respondent's apparent honest belief, produced by appellant's action, that, as the situation then presented itself to him, it was not possible for him to turn further to the right without coming in collision with appellant's car, and the apparent impending danger requiring very prompt action; we think the jury had the right to decide, as a matter of fact, that respondent was not guilty of negligence, that he acted as a reasonable person would under the circumstances, and that appellant's negligence was the real proximate cause of the accident.

It is argued that, had respondent proceeded on his course without turning in either direction, appellant would have missed him and passed to his left when he, appellant, turned to the right. We do not think the evidence is conclusive of this fact, but, even if it were, it is not now so much a question of what would have occurred had this course been pursued, but rather, what did appellant's negligent acts—and we are to assume that the jury believed they were negligent—induce respondent, as a reasonable man, to do at the particular time. The court could not decide, as a matter of law, that respondent acted negligently under the circumstances as they then existed and appeared to him. If appellant's negligence was the cause of respondent's acting as a reasonable man, turning

to the left, as the jury evidently found, respondent was, under the circumstances, absolved from obeying the law of the road and turning to the right. It must be conceded that a somewhat convincing argument can be made, as it has been by counsel for appellant, in favor of appellant upon this branch of the case. It may be that the court might disagree with the conclusions reached by the jury. But we think it cannot be said that there is no room for honest difference of opinion as to the negligence constituting the real proximate cause of the damages here involved. This makes the case one for the jury and not for the court.

It is contended that the court erred in giving certain instructions, especially the following:

"You are instructed that if you find from the evidence that the plaintiff might have avoided the accident by adopting some course of action other than that pursued by him, he would not necessarily be guilty of contributory negligence in that respect, provided you find that he acted as an ordinarily careful and prudent person would have acted under like circumstances and conditions; and you further find that an ordinarily prudent man under the particular circumstances surrounding the plaintiff at the time would have been justified in adopting the course pursued by the plaintiff. The plaintiff's conduct in that regard is not necessarily to be judged by the facts as they now appear before you, but the plaintiff is entitled to have his acts and conduct considered in the light of the facts as they appeared to him at the time, and if you find that an ordinarily careful and prudent man would have acted as the plaintiff acted with his, the plaintiff's view of all the circumstances as they were at that time, you will be justified in finding that he was not guilty of contributory negligence."

This is, in substance, the instruction approved in *Hull v. Seattle, Renton & Southern R. Co.*, 60 Wash. 162, 110 Pac. 804. The principal argument made against this instruction seems to be that it is not applicable to this case, upon the assumption that respondent deliberately turned to the left in violation of the law of the road. We have seen that there

was evidence excusing him from turning to the right more than he did, if believed by the jury. The instructions as a whole fairly stated respondent's legal duty in this regard, leaving to the jury the question of whether he acted as a reasonably prudent man would have acted under the circumstances. Other claims of error in the instruction, we think, are without merit and do not call for discussion.

The judgment is affirmed.

MOUNT and FULLERTON, JJ., concur.

MORRIS, J. (dissenting)—I cannot concur in the majority opinion. No amount of argument can change the fact that it was the duty of both parties to keep to the right to avoid a collision, or that if respondent had obeyed this law of the road, or not obeyed it but kept on his course, no collision would have occurred. The proximate cause of the collision was respondent's turning his car to the left and colliding with appellant when appellant was where he should have been. His negligence in this regard—for it has been held negligence *per se* not to follow the law of the road—is excused by the jury and concurred in by the majority because of his belief that appellant did not intend to turn out but evidently purposed to drive his machine directly upon him, a belief that subsequent events proved was not well founded. Yet he is permitted to recover because of his mistaken belief and his wrongful act in driving his machine against that of appellant when appellant was where the law required him to be and doing all that he was required to do to avoid a collision. One may well inquire, if, as respondent says, he turned to the left to avoid a collision with appellant, why he did not turn to the right on the "smooth prairie" spoken of in the majority opinion, where there was no obstacle to prevent the safe driving of his machine. His excuse for not doing so was the telephone poles; but these poles were 126 feet apart and there was from 76 to 86 feet, according to the figures used by the majority, between respondent and the nearest pole

when he turned to the left. This, it seems to me, was ample distance within which to avoid a telephone pole on the smooth prairie. It is true that the verdict of a jury is conclusive upon contested facts, but I find no conflict in any of these determinative facts. The only conflict is by way of conclusion based upon facts not conflicting. While we cannot disturb a verdict based upon conflicting facts, we ought not to permit one based upon facts not conflicting to stand, when it violates both the facts and the law. I therefore dissent.

CROW, C. J., concurs with MORRIS, J.