29686. MORROW *v.* SOUTHEASTERN STAGES INC. *et al.*

DECIDED OCTOBER 10, 1942.

*Tolnas & Middlebrooks, Burress & Dillard,* for plaintiff.

*Erwin & Nix,* for defendant.

SUTTON, J. Harry P. Morrow brought suit against Southeastern Stages Inc. and American Fidelity & Casualty Company, its insurance carrier, to recover damages because of injuries sustained by him through the alleged negligence of the defendant bus company while riding as a guest in an automobile being driven by one Therman Giles. The petition alleged, in substance, that on or about September 20, 1940, at about 4 o'clock in the afternoon, he was riding as a guest in the automobile of the said Giles, the car being operated in a westerly direction along U. S. highway 29, from Athens, Georgia, to Atlanta, Georgia, and at a point about three miles out from Athens and approximately in front of an establishment known as "Pines Tourist Camp;" that there is a long curve in said highway at and near the said camp which is about 100 feet east of a sharp point in the curve; that operators of vehicles traversing the highway at said curve, going in either direction, had at all times a clear view ahead of them of others who might be using the highway at the curve; that when the defendant bus company's coach, approaching the automobile in which the plaintiff was riding, came from around the sharp part of the curve, about 100 feet west of a point directly in front of the said camp, and when it was near the automobile the operator of the coach suddenly and without warning turned it to the left on that part of the highway upon which the automobile was being driven; that it ran against and knocked the automobile off the pavement over on the shoulder of the road and out in the weeds at the extreme right of the road on the side the automobile was using and came to a stop against the automobile, severely injuring the plaintiff in described particulars. It was alleged that the defendant was negligent in that the operator of the bus did not turn it to the right of the center of the highway as he approached the automobile so as to pass without interference; that upon meeting the automobile he turned the

coach to the left of the highway, in front of the automobile; that in rounding the curve leading to the point of collision the operator of the coach did not keep it as far to the right as was reasonably possible; that he was driving the coach at a greater speed than was reasonably safe; that he did not keep a proper lookout for traffic ahead of the coach; that in rounding the curve he did not reduce his speed as is required by law; and that he drove the coach on his left side of the highway at said time and place contrary to law.

The defendant filed an answer denying the substantial allegations of the petition, and further alleged that the collision was due entirely to the negligent manner in which the Ford automobile was being operated; that at the time and place of the collision the car was being driven on the wrong side of the road at a greater rate of speed than was safe under the circumstances and that the injuries suffered by the plaintiff, if any, were in no way attributable to any act on the part of the defendant, its agents, servants, or employees. The jury returned a verdict for the defendants, and the plaintiff's motion for new trial was overruled, and the exception here is to that judgment.

1. One of the grounds of the motion for new trial complains that the court erred in charging the jury, "I charge you, if you find from the evidence this collision was an accident, occurring without negligence on the part of either party, the plaintiff or the driver of the Ford car or the driver of the bus, then the plaintiff would not be entitled to recover a verdict in this case, but [it] would be considered a mere casualty and no blame is attributable to any one if it was an accident;" it being contended that there were no pleadings or evidence to authorize such a charge, the issue being solely whether the plaintiff's injuries were caused by the negligence of the bus driver or that of the driver of the automobile, and an "accident" being in no wise involved. We think the point is well taken. The evidence was such as to authorize the jury to return a verdict for either party but, as is shown by the following summary, entirely excluded any issue of "accident" and none was made by the pleadings: It was shown that the plaintiff was an invited guest in the automobile and had no control over it and was not engaged in a joint adventure with the driver. On the afternoon of September 20, 1940, at about 4

o'clock, the automobile being driven by one Therman Giles, and also being occupied as guests by the plaintiff and another young man on the front seat and two other young men on the rear seat, collided with a bus of the defendant bus company on the Atlanta-Athens highway, the automobile being driven towards Atlanta and the bus being driven towards Athens. As a result of the collision the plaintiff sustained serious injuries. About 3½ miles out from Athens there is a curve in the highway, and the collision occurred just after the bus had rounded the sharp part of the curve and had reached a point about opposite an abandoned "drive-in" known as "Pines Tourist Camp," located to the right of the bus some distance from the highway, and having in front of it a space of ground approximately 100 x 70 feet about on a level with the highway. According to the evidence for the plaintiff, the automobile was traveling along its proper side of the highway, and the bus came around the curve on the wrong side and crashed into the automobile. As soon as the driver of the car detected the negligence of the bus driver he made an effort to avoid a collision by turning to the right, and the car was driven somewhat off the pavement and was struck on its left front, whereas the collision would have been avoided if the bus had been driven to its right onto the space of ground in front of the "Pines Tourist Camp" and into which the driver had full opportunity to turn. According to testimony on behalf of the bus company, the Ford automobile was being driven on its left side of the road, and the bus was being driven on its proper side at all times. The bus on rounding the curve slowed down its speed to about 35 miles an hour, then picked up speed to about 40 to 45 miles an hour shortly before the collision. When the vehicles were about 20 to 25 feet apart the bus turned sharply to the left and the automobile turned sharply to the right, the bus driver putting on his brakes, but nevertheless colliding with the automobile and pushing it a few feet, so that its right front wheel was off of the pavement and the front of the bus was against the left front of the automobile. There was evidence for the defendant bus company, denied by witnesses for the plaintiff, that just before the collision the three young men on the front seat of the Ford automobile were looking in the direction of the "Pines Tourist Camp" to their left, and, according to one

of the defendant's witnesses, a disinterested traveler on the bus, the car was so far on the bus's side of the road that its left wheel or wheels traveled off the pavement and upon the space in front of the camp and created dust from its unpaved surface; that just before the collision the three young men on the front seat were looking in the direction of the "Pines Tourist Camp" and then their heads, "as if on a string," were simultaneously turned to the highway and their car was suddenly driven to the side of the road on which they should have been traveling. The bus driver testified that when he saw the car, after he rounded the curve, it was gradually veering towards the left and was on the wrong side of the road, and he concluded that it was going to enter the grounds of the camp, and that for that reason he did not blow his horn or anticipate any collision, but that when within 20 to 25 feet of the car he perceived that a collision was impending and turned his bus sharply to his left to avoid it, putting on his brakes, but that at the same instant the Ford automobile was suddenly turned to the same side of the road and the impact resulted.

"An 'accident' in its strict sense implies the absence of negligence, for which no one would be liable." *Stansfield* v. *Gardner*, 56 *Ga. App.* 634, 645 (193 S. E. 375). "In its proper use the term 'accident' excludes negligence; that is, an accident is an event which occurs without the fault, carelessness, or want of proper circumspection of the person affected, or which could not have been avoided by the use of that kind and degree of care necessary to the exigency and in the circumstances in which he was placed. Black's Law Dictionary, 23." *Richter* v. *Atlantic Co.*, 65 *Ga. App.* 605 (4), 608 (16 S. E. 2d, 259). It is clear from the evidence that the plaintiff's injuries were caused either by the negligence of the driver of the automobile or that of the driver of the bus. The defendant did not plead accident, and the evidence did not raise any issue in that respect. It is a well-settled principle of law that a charge is error which states general principles which are correct in the abstract but which are not applicable to the facts proved and which might confuse or distract the jury from the real issues made by the evidence. The jury returned a verdict for the defendants in the present case. It may be that the jury reached the conclusion that the defendant

bus company's driver was entirely without fault, and that the negligence of the driver of the automobile was the proximate cause of the plaintiff's injuries, but, under the charge which is complained of, it can not be said that its attention was not distracted from the real issues of negligence by a consideration of a theory wholly unauthorized by the evidence. As was said in *Atlantic Coast Line R. Co.* v. *Jones,* 132 *Ga.* 189, 196 (63 S. E. 834); "There was no evidence from which the jury could have found that the collision was an unavoidable accident. Somebody must have been at fault, and the question for the jury to determine was, who was guilty of negligence; and they should have been permitted to go directly into that question, without having their attention distracted by the consideration of the impossible theory that the death of the plaintiff's husband was the result of an accident." Because of the error complained of the judgment of the trial court must be reversed.

2. Error is assigned on the charge of the court, "If the bus was being driven along its right side of the road, and if the Ford was approaching along its left side of the road so as to create a danger of collision, the bus driver's turning to the left to avoid such collision would not be considered a violation of that rule of the road that requires drivers of meeting vehicles to each turn to the right of the center of the highway so as to pass without interference," it being contended that it in effect stated to the jury that the act of the bus driver, under the hypothesis expressed in the beginning of the excerpt, would constitute due care on his part, was an expression of opinion, and was not the law. The objections are without merit. The court expressed no opinion as to the facts of the case but stated a sound proposition of law, because if the bus was being driven along its proper side of the road and the Ford automobile was approaching along its left side of the road *so as to create a danger of collision,* an emergency was thereby created as a matter of law, and if, as his testimony shows, he thought best to turn to the left to avoid a collision, which was imminent and which, in the opinion of the jury, was brought about by the negligence of the driver of the Ford automobile, his act in turning to the left would not in law be negligence. Ordinarily, "The rule of the road requires travelers with vehicles, when meeting, to each turn to the right."

148

Code, § 105-112. "An operator meeting another vehicle coming from the opposite direction on the same highway, shall turn to the right of the center on the highway, so as to pass without interference. . . An operator in rounding curves shall reduce speed and shall keep his vehicle as far to the right on the highway as reasonably possible." Code, § 68-303 (c, e). But "A person threatened with an imminent danger is not held to the same circumspection of conduct that he would be held to if he were acting without the compulsion of the emergency. A person has a right to choose even a dangerous course, if that course seems the safest one under the circumstances." *Pacetli* v. *Central of Georgia Railway Co.*, 6 *Ga. App.* 97, 102 (64 S. E. 302). This principle of law has been reiterated in numerous decisions of the appellate courts of this State and is universally recognized. While, of course, questions as to negligence, proximate cause, and whether or not an emergency exists are ordinarily for the determination of the jury, yet in plain and indisputable cases such questions may be resolved by the courts as a matter of law. The charge to which objection is made does not deal with the question of negligence of the bus driver except in respect to the mere act of turning to the left to avoid a danger of collision, and properly informs the jury that such act would not be considered a violation of the rule of the road, which ordinarily requires each of two meeting vehicles to turn to the right, *if* the Ford car was approaching along its left side of the road so as to create a danger of collision. If the jury believed that the driver of the Ford automobile created a danger of collision; then in that event the facts would be taken as showing an emergency as a matter of law, and in such circumstances the driver of the bus would not be violating the law of the road merely by the act of turning to the left to avoid a collision. In case of emergency a swerving of a traveler to the wrong side of the road is not negligence. Skene v. Graham, 114 Me. 229 (95 Atl. 950). A driver is justified in turning to the left side of the road in order to avoid a collision. Clark v. Woop, 159 App. Div. 437 (144 N. Y. Supp. 595); McFern v. Gardner, 121 Mo. App. 1 (97 S. W. 972). "So, in an action for injury sustained when two automobiles collided in the highway, plaintiff, turning to the left, while acting as a reasonable man upon the honest belief that he would thereby

avoid a collision with the defendant, was absolved from obeying the law of the road and turning to the right." Lloyd *v.* Calhoun, 78 Wash. 438 (139 Pac. 231). As stated, the charge dealt only with the question whether or not, if an emergency was created by the plaintiff, the defendant would be justified in not obeying the law of the road as to turning to the right and instead turning to the left to avoid a collision, and the court did not err in instructing the jury that under the hypothesis stated the driver of the bus would not be considered as violating the law of the road. The charge was not error for any reason assigned.

3. Error is also assigned on the charge of the court, "If the bus was being driven with due care along its right side of the road, and the Ford was approaching along its left side of the road so as to create a danger of collision, such danger so created by the driver of the Ford automobile constituted an emergency confronting the bus driver. If such emergency was so created, and if the bus driver thought it best to turn left to avoid the collision and accordingly did turn to the left, he would not be deemed negligent in doing so, whether or not, on mature thought, another means of avoiding the collision might seem better. One who must think and act quickly in an emergency created by another is not held responsible by the law in choosing his method of avoiding the danger, or of making the wisest choice. The law recognizes that the prompt action required in an emergency can not wait on the wisest choice to which deliberate reflection might lead." This excerpt is similar to the one dealt with in the preceding division of the opinion, including in addition an express statement by the court that, if the danger of collision was created by the automobile being driven on the wrong side of the road, such danger so created would constitute an emergency confronting the bus driver. Such declaration by the court stated a correct principle of law, and the charge was not objectionable for any reason assigned.

As the judgment is being reversed under the ruling in the first division of the opinion, no ruling is required on the general grounds of the motion for new trial.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*