James W. Skene *vs.* John R. Graham, et al.

Kennebec.    Opinion December 14, 1915.

*Collision.    Damages.    Negligence.    Personal Injuries.    Swerving to
the Right.*

1.  It is the duty of travelers approaching to meet, seasonably to turn to the right of the middle of the traveled part of the road, so far that they can pass each other without interference.
2.  It is manifest that the collision was due to the fact that both cars swerved from their course at the same instant, the car of the defendants swerving from its lawful position to one of supposed safety in order to avoid an accident, the other leaving its unlawful position and course for the same reason. That the swerving of defendants' car was imperative is apparent; that an emergency existed not only justifying but authorizing the defendants' chauffeur in so swerving is equally apparent. That his act was not due to his unlawful use of the road is shown by an overwhelming weight of the evidence, and that the defendants are not liable for any damage arising in the circumstances is a principle firmly established.
3.  When two alternatives are presented to a traveler upon the highway as modes of escape from collision with an approaching traveler, either of which might fairly be chosen by an intelligent and prudent person, the law will not hold him guilty of negligence in taking either.
4.  It is the opinion of the court that the verdict is so manifestly against the weight of the evidence that it should not be permitted to stand. It is unnecessary to consider the exceptions.

On motions by defendants.    Motion sustained.    New trial granted.

This is an action on the case to recover damages against John R. Graham and his wife Georgie H., for personal injuries alleged to have been caused by the negligence of the defendants' chauffeur while operating an automobile on Western avenue in Augusta, August 26, 1913. Plea, the general issue. The jury returned a verdict for plaintiff for $2175.00, and the defendant filed a general motion for a new trial. Defendant filed various requests for instructions by the presiding Justice, all of which were refused, and the defendant excepted. Exceptions not considered.

The case is stated in the opinion.

*Williamson, Burleigh & McLean,* for plaintiff.
*Ryder & Simpson,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J. This is an action on the case to recover damages for personal injuries sustained by the plaintiff in a collision between the plaintiff's and defendants' automobiles. The jury returned a verdict for the plaintiff for $2175.00.

The case is before the court on the defendants' general motion for a new trial, and exceptions to the refusal of the presiding Justice to direct a verdict for the defendants, and refusal to give certain requested instructions.

The collision occurred at the corner of Western avenue and Sewall street in Augusta, on August 26, 1913. The plaintiff was driving a Ford car easterly on Western avenue, while the defendants were traveling westerly in a Packard car on the same street. The plaintiff was driving his own car, the defendants' car being in charge of a chauffeur. The southerly side of Western avenue was closed to traffic from a point 100 feet from its junction with Sewall street, but the northerly side of the street was open and in use by the public on the day in question, and there was sufficient room for automobiles and other vehicles to pass and repass, the width of that side of the street being 24 feet. The plaintiff left his garage with the intention of going to Manchester, and had passed up Western avenue some 275 feet when he decided to return to the garage. His counsel questioned him as follows:

"Q. Describe your course back?

A. I went right straight down the north side of the street until I got down to where I could go across the track. There was lumber and horses piled up there, so you could not get past; and so I went down and crossed the track and then proceeded on the right hand side, extreme right hand side of the street, down to Sewall street.

Q. And where was the Packard car when you first noticed it?

A. It was on Western avenue on the right hand side of the street, which would be the northerly side, coming up the avenue.

Q. That would be its proper side?

A. Yes; its proper side.

Q. Will you describe the collision; first, will you tell us where the collision took place.

A. Right on the corner of Western avenue and Sewall street, on left or south side of Sewall street; at the junction of Sewall street and Western avenue.

Q. On which corner of Sewall street was it, east or west?

A. Very nearly the middle of the street.

Q. Will you describe the accident fully?

A. Well, I was going along on my right hand side of the street, and this big Packard car came tearing up Western avenue; and when it came nearly opposite to me, all at once it swung right around, and crossed the track and struck my car."

The plaintiff claims that the defendants' car was driven out of its course, and from its lawful position on the northerly side of Western avenue, across said avenue and into collision with his car, which was and had been for some distance, proceeding on the (his) extreme right hand side of said avenue; that he was in the exercise of due care, traveling ten or twelve miles an hour, while the defendant was driving forty miles an hour. This condition, if true, would constitute culpable negligence on the part of the defendants.

But the defendants in support of their motion for a new trial contend that the evidence did not authorize the jury to find for the plaintiff, that the collision was the result of the plaintiff's own carelessness, and that any damage resulting therefrom was due to his fault and want of due care.

Harry A. Haas, who was driving the defendants' car, testified:

"Q. You started from Bangor?

A. Yes, sir.

Q. When you got to Augusta what course did you take?

A. Well, I came up State street and up Western avenue; and at Western avenue and Sewall street the accident happened.

Q. Won't you state in your own words just what happened after you left State street, on your way up Western avenue, up to the time of the collision?

A. Well, I was going up Western avenue close to the gutter, on my right hand side, on the north side of Western avenue, and I was going about 15 miles an hour; and I saw Mr Skene's Ford automobile stop close to the curb on the other side at a house, and when I got

about half way up, he started, running close to the curb in my direction. I proceeded along Western avenue and when we got close to Sewall street, he had not turned out; and if we had kept that same course, we would have run into each other head on. And so when we got to Sewall street, I swung out, and he swung out at the same time; and I turned around and stopped the machine, and he came there and caught me.

Q. At the time of the collision, the Packard car was stopped?

A. Stopped; yes, sir.

Q. And how fast should you say the Ford machine was going when he struck you?

A. Eight or ten miles an hour.

Q. But the turning, what about the turning?

A. Both turned practically the same time. I was turning to get out of his way, to pass him; and he turned at the same time. I could not turn back, because I would run into him head on; and I ran over and stopped, and he ran into me."

The defendants corroborated Mr. Haas in all important particulars, and he is corroborated by the plaintiff's witness Brown, the only witness introduced by the plaintiff who saw the collision, upon the most vital point in the case.

Mr. Brown testified as follows:

"Q. Will you describe what took place, the course of that Ford car before the accident?

A. Well, before the accident, I was coming up Sewall street going to Western avenue; and Mr. Skene, he was up Western avenue, coming clear up from somewhere, and he went up into a yard, and I was coming along and looking that way, and I saw him.

Q. You were going to the north?

A. Yes, sir; and he came down Western avenue, clear up, and he went by where they were working in the street there, and he swung over and turned across the track there where they run the electric cars; and I saw a big automobile come and go right straight across; and it went right into him and I hadn't seen that other car; and why, because Governor Burleigh's house hid me from looking down, I had not got far enough up. I was right by the corner of Governor Burleigh's house, and I was by the Soule house, and that car was behind there coming up, and there at the corner was Gov-

ernor Burleigh's house and that hid the car coming from the other way, from down street, the car coming was not in view there.

Q. Could you see the course of the Ford car all the time?

A. Yes, sir; but I did not see this big car until it came out and turned right across.

Q. Turned right across what street?

A. Western avenue—came right across. And Mr. Skene was coming from the other side of the street, cross ways.

Q. On what side of the street was Mr. Skene at the time you saw the accident?

A. On the south side of the street, coming down Western avenue."

The collision occurred on the south side of Western avenue.

It is the duty of travelers approaching to meet, seasonably to turn to the right of the middle of the traveled part of the road, so far that they can pass each other without interference. R. S., Chap. 24, Sec. 2. *Neal* v. *Randall,* 98 Maine, 69.

The defendants' contention is that the plaintiff did not seasonably turn to the right, and that the chauffeur driving the defendants' car was obliged to decide quickly whether to continue his course and collide with the plaintiff's car, or turn to the left and avoid a collision.

The case shows that the defendants were proceeding along Western avenue on the right side of the traveled way, that they had no occasion or desire to cross over to, or use the opposite side of the avenue, and it clearly appears that if the plaintiff had not been approaching from the opposite direction, they would not have done so, and it is equally certain that if the statement of the plaintiff is true they would have had no occasion to cross over to the other side. From the plaintiff's own showing, he had no reason to believe that the defendants intended to leave their course. Between the point where he could have turned to his right and the point of contact there was one hundred feet of clear way, a space admittedly sufficient for such turning in time to avoid collision; so that from the very nature of the case, if the plaintiff's statement is true the collision would not have occurred, and certainly could not have happened in the manner described. It is not explained in the evidence, nor does it appear clear from the briefs of counsel, how under all

the circumstances claimed by the plaintiff, the left side of his car could be struck by the right side of defendants' car. It is manifest that the collision was due to the fact that both cars swerved from their course at the same istant the car of the defendants swerving from its lawful position to one of supposed safety in order to avoid an accident, the other leaving its unlawful position and course for the same reason. That the swerving of defendants' car was imperative is apparent; that an emergency existed not only justifying but authorizing the defendants' chauffeur in so swerving is equally apparent. That his act was not due to his unlawful use of the road is shown by an overwhelming weight of the evidence, and that the defendants are not liable for any damage arising in the circumstances is a principle firmly established. When two alternatives are presented to a traveler upon the highway as modes of escape from collision with an approaching traveler, either of which might fairly be chosen by an intelligent and prudent person, the law will not hold him guilty of negligence in taking either. *Larrabee* v. *Sewall,* 66 Maine, 376, and cases cited.

It is the opinion of the court that the verdict is so manifestly against the weight of the evidence that it should not be permitted to stand. It is unnecessary to consider the exceptions.

*Motion sustained.*

*New trial granted.*