BURNS B. BRAGDON *vs.* WESLEY S. KELLOGG.

Aroostook.   Opinion February 1, 1919.

*Revised Statutes, Chap. 26, Sec. 2 interpreted.   General rules of law applicable to drivers of automobiles or teams approaching street corners.   Rule in case of imminent danger where driver has not taken the safest or best course being guilty of the charge of negligence.*

This case involves a mixed question of law and fact.   It grows out of an automobile accident, happening in broad daylight, on a road of ample width to allow two cars to pass each other without danger of interference.

The law of the road, R. S., Chap. 26, Sec. 2, applies to automobiles, and makes it mandatory that cars approaching each other to meet must "seasonably turn to the right of the middle of the traveled part of the way."

*Held:*

1.   That the fact that a party is on the wrong side of the road at the time of a collision is strong evidence of carelessness, and, unexplained and uncontrolled, exclusive evidence of carelessness.

2.   This clearly throws the burden on the offending party in such a case.

3.   That operators of cars, in seasonably turning to the right, must anticipate not according to the legal, but the usual experience of mankind in running automobiles in the public ways.

4.   That it is a matter of common knowledge, "the usual experience," that automobiles are more often driven without any reference to legal speed than in the observation of it.

5.   That operators are not authorized to rely on the legal presumption that an approaching car is coming at a legal rate of speed, but must exercise due care in the operation of their own car, especially in approaching corners, curves and turns in the road, where their vision may be wholly or partially obscured.

6.   If each party driving a car, fast or slow, approaching a street corner, or a curve or bend in the road, whether the corner or the curve is blind or visible, would keep to the right of the middle of the traveled part of the road, no collision could ever occur;   hence the rule that operators should so drive their cars at these places.

7.   Applying this rule of due care to the present situation, we are of the opinion that the plaintiff's car was guilty of contributory negligence.

Action on the case to recover damages on account of the alleged negligence of defendant.      Defendant filed plea of general issue. Verdict for plaintiff in the sum of $165.00.      Defendant filed motion for new trial.      Judgment in accordance with opinion.

Case stated in opinion.

*Shaw & Thornton*, for plaintiff.

*Verdi Ludgate, and Hersey & Barnes*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

SPEAR, J.   This case involves a mixed question of law and fact. It grows out of an automobile accident, happening in broad daylight, on a road of ample width to allow two cars to pass each other, without the least danger of interference.

The facts in this case show but a repetition of the negligent conduct in the operation of cars, that constitutes a prolific source of the accidents that occur in this class of cases.

This accident happened in the village of Sherman, town of Sherman, Aroostook County.   The plaintiff's son was driving a new Buick car, westerly, upon Main Street, a well wrought piece of road, with the intention of turning to his left at practically a right angle into North Street.   The defendant was on North Street, travelling south, intending to turn at a right angle to his right into Main Street.   That is, these parties were approaching, each to turn the same corner into the same street from which the other was coming.

As North Street formed a junction with Main Street without crossing it, it was evident to any one approaching either side of North Street from Main Street, that a car coming from the north must turn either to the right or the left, into Main Street, when it reached the junction.

These two streets meeting each other in this way present a somewhat different situation than would arise if they crossed each other, forming four corners, in this, that a car on Main Street approaching North Street, is charged with the knowledge that a car coming from North Street must necessarily turn to the right or the left into Main Street.   Therefore it is inevitable, that each party, where one intends to turn to the north and the other to the west, knows that he may

meet the other, at any moment, at the corner made by the junction of these two streets. If they can see each other, as they approach the corner, there is no earthly excuse, why they should meet in collision. If they cannot see each other, then greater is the duty with which they are each charged that they be absolutely on their proper side of the road.

. The law of the road was established many years ago, before electric roads or automobiles were heard of, yet it provided that even slow moving vehicles like teams, upon approaching to meet on a way should "seasonably turn to the right of the middle of the travelled part of it, so far that they can pass each other without interference." R. S., Chap. 26, Sec. 2. As the word "team" now includes an automobile, this statute is applicable now to this class of vehicles. This statute is mandatory when it says travellers must "seasonably turn to the right." It means that they must turn in season to prevent a collision, and the one who fails to obey this mandate is prima facie guilty of negligence, and must sustain the burden of excusing his presence upon the wrong side of the road.

In *Neal* v. *Randall*, 98 Maine, 69, a leading case, this rule of conduct, even of teams, is fully confirmed. This is a case in which the street upon which the parties were passing in opposite directions, was located in the City of Auburn and was from 40 to 50 feet wide. Either side of the middle of the travelled part of the way was wider than the wrought part of the ordinary country road. There was ample room, on either side of the middle for three teams to pass abreast. The defendant was on his wrong side of the road, with ample room to pass the plaintiff, without interference; "but just as the teams were about to meet and pass each other the horse attached to the wagon in which the plaintiff was riding, became suddenly frightened . . . and shied towards the defendant's team" and the accident happened. The court found that "there was no other evidence of any negligence on the part of the defendant except the mere fact of the position of his team on the left of the middle of the travelled part of the road." Upon this state of facts the court, on report, found that the case should stand for trial.

But the grounds upon which the case was decided is the important consideration. On page 73, "Seasonably turn" is defined as follows: "Seasonably turn" means "that travelers shall turn to the right in

such season that neither shall be retarded in his progress, by reason of the other occupying his half of the way, which the law has assigned to his use, when he may have occasion to use it in passing. In short, each has an undoubted right to one-half of the way whenever he wishes to pass on it, and it is the duty of each, without delay, to yield such half to the other."

Upon the question of prima facie negligence the court say: "This is a regulation to. avoid collisions, and if one neglects it, and an accident follow, an explanation of the occurrence must begin with some presumption against him. Cooley on Torts, page 666. This court has held the fact that a party was on the left side of the road at the time of the collision "strong evidence of carelessness," and has said that unexplained and uncontrolled, it would not only be strong but conclusive evidence of carelessness." *Larrabee* v. *Sewall*, 66 Maine, 381. The court further say, same page: "Notwithstanding the statutory duty to turn to the right of the middle of the traveled way the defendant had the right to be upon any part of the road, and his negligence must arise out of his failure to exercise ordinary care under all the circumstances. There was ample room for the plaintiff and her husband to pass on the defendant's left, and they would have passed in safety had they kept upon the same course. On the other hand, the defendant was on the wrong side of the road, he saw the plaintiff approaching in ample time to turn to the right of the middle of the traveled road. There was nothing to prevent his doing so, and the evidence tended to show that had he done so there would have been no collision." ·

These citations state the responsibility that rests upon the slow moving horse team in its duty to observe the law of the road, and declares a collision on the wrong side of the road, unexplained "conclusive evidence of carelessness." This clearly throws the burden on the offending party in such a case. This same case then treats the question of duty or care which the law imposes upon travelers, moving with animal power. On page 76 it is held: "To hold the defendant, however, it is not necessary that he should be able in the exercise of ordinary prudence to foresee the precise form in which the injury in fact resulted. *Hill* v. *Winsor*, 118 Mass., 251. "The injury must be the direct result of the misconduct charged, but it is not to be considered too remote if, according to the usual experience of mankind, the result ought to have been reasonably apprehended."

These rules of conduct and responsibility on the road apply to vehicles moved by animal power. They must accordingly be applied with emphasized severity to vehicles weighing tons, capable of great speed and propelled by mechanical power. Because, most duties in life are measured by the consequences of a breach; and ordinary care is always predicated upon the degree of danger of which it is spoken.

Yet the persistent claim of automobile operators is that they have a right to use any part of the road, which they do, and are entitled to always rely in their use of the road upon the presumption that the other party is driving at a legal rate of speed, so that they can regulate their conduct upon this legal presumption. But this rule cannot be invoked even in ordinary cases of negligence much less in an automobile case. Such operators cannot confine their anticipation to a legal rate of speed as a protection. They are held to anticipate that, according "to the usual experience of mankind the result ought to be reasonably apprehended." These operators must anticipate not according to the "legal" but the "usual" experience of mankind in running automobiles on the public highways.

It is, then, a matter of common knowledge, the "usual experience," that automobiles are more often driven without any reference to legal speed than in observation of it. True, in the trial of automobile cases there are almost always two rates of speed that might be marked, plaintiff's 1, and plaintiff's 2, in which the plaintiff is seldom ever going over a speed of from 8 to 12 miles, while the defendant is going at from 25 to 45 miles an hour, and sometimes so fast that his speed produces a result in the nature of a blur, as he passes. Nevertheless, the truth is, that automobile operators pay little attention to the legal rate of speed. Hence it is "the usual experience" of operators that they are not authorized to rely on the legal presumption that an approaching car is coming at a legal rate of speed, but must exercise due care in the operation of their own car, especially in approaching corners, curves and turns in the road, where their vision may be wholly or partially obscured. Accordingly, the claim that an operator has a right to rely on the presumption of a legal rate of speed, cannot be admitted. Nor is the presumption of legal reliance allowed in many other cases of negligence. The gates at a railroad crossing are to warn the public, when down, and invite it across, when up, yet the court holds that lifted gates do not relieve the traveler from contributory negligence, if he relies wholly upon them. A railroad train

is confined to a speed of six miles an hour through the thickly settled parts of villages, yet it is held that the public cannot rely upon the legal presumption of this rate of speed and thereby claim relief against the charge of contributory negligence. And so the instances might be multiplied. Accordingly, if as a matter of law the operator of an automobile is not authorized to rely upon the presumption of a legal rate of speed by the other car to relieve him from the charge of contributory negligence for being on the wrong side of the road, himself, in a collision, then arises the vital question, what are the duties imposed upon him, that will enable him to sustain the burden of proof against the legal presumption, of his own negligence, by being in an accident on the wrong side of the road?

It should be noted as above seen, that, unexplained, a collision is "conclusive evidence of carelessness," against the party on the wrong side of the middle of the traveled part of the road. In view of the great speed at which automobiles are capable and at which they are actually driven, we think it not a difficult task to deduce a workable rule. In *Savoy* v. *McLeod*, 111 Maine, 234, we laid down the general rule touching the operation of automobiles. There we said that in the operation of street cars "the court should establish as a law the rule which prevents injury or loss of life rather than that which invites or even permits it," and that the same rule applies to the operation of automobiles "except that the degree of dilgence is varied to correspond with the diminished danger."

But since the announcement of that opinion, we believe it to be a matter of common knowledge that the operation of automobiles is not now one of "diminished danger."

It seems to us that it is now advisable to reduce these somewhat disconnected principles of law to a more specific rule of due care, with reference to accidents that are so frequently occurring between cars approaching to meet at street corners, and upon curves in the road. It is difficult to say which place has become the more dangerous. It is a matter of common knowledge, however, that our country roads, located in the woods and bordered by trees, in their course are so constantly turning to avoid hills, ledges, marshes and other obstacles, that it is not seldom, but often, that cars approaching to meet, at a street corner or upon a curve, can see each other but a short distance ahead. This condition is recognized by the Automobile Association

of Maine, so that it also becomes a matter of common knowledge, that this association has wisely, at no small expense, caused the erection of signs at blind curves in the road, and at blind street corners, bearing the warning signal, "Go slow, Danger ahead" or some similar notice.

Yet it is claimed upon nearly every trial involving this class of accident that a vehicle of any kind including an automobile, has a right to travel in any part of the way, and has a right to rely on the presumption that every approaching car will observe the speed laws; and that if it had the other would have had plenty of time to have reached its own side of the road. Now, there is no question that any kind of a vehicle has a perfect right to travel in any part of the road, so long as it does not violate the rule of due care. But what is due care? What is the object of establishing legal rules of duty? Nothing more or less than to discover from actual experience what conditions produce danger, and then declare what shall be done to prevent such conditions. It matters not whether it is overspeed or underspeed if it is a cause of accident. It is to prevent the causes of accidents whatever their origin, that rules of due care are made. Experience has demonstrated that accidents are constantly occurring, at street corners and around blind curves on the road, for want of observance of proper care by automobile operators. Why, then, should not a rule be suggested that will obviate these dangerous conditions?

In this class of cases the following deduction is unanswerable: If each party driving a car, fast or slow, approaching a street corner or a curve or bend in the road, whether the corner or the curve is blind or visible, would keep to the right of the middle of the traveled part of the road, no collision could ever occur. Hence the rule that operators should so drive their cars at these places. We think this precaution is reasonable, and necessary to prevent accident, and should be imposed as a legal duty. This rule imposes no hardship but, if observed, will save life and limb. It is not new. It is as old as the law of the road. It applies the words of the statute, "seasonably turn to the right" to the speed of an automobile over the speed of a horse, precisely as before the automobile, it applied them to the speed of a horse over the speed of an ox. If at a corner or bend or on a straight road, one car can see the other, it is a statutory duty to

"seasonably turn" to the right. A fortiori should it be a statutory duty to so turn, at a blind corner, or turn in the road, when legally bound to anticipate that an approaching car may at any moment appear.

Applying this rule of due care to the present situation, we are of the opinion that the plaintiff car was guilty of contributory negligence. Without deciding that the inexperience, per se, of the driver, made him incompetent, we yet strongly feel that he lacked that experience necessary to give proper satisfaction that his lack of experience did not contribute to the accident. His father had owned this Buick car but eleven days. His experience with other cars, before this spring, was in his own words, "somewhere around 100 miles." This must be regarded as meager experience for a boy 19 years old to prepare him to operate, upon the public streets, that tremendous engine of power known as a Buick 6.

But aside from this question of inexperience, it is apparent from the evidence that the driver of the plaintiff's car was guilty of contributory negligence in his failure to observe the law of the road in turning his car into North street. The evidence is so voluminous that space will not permit of an extended discussion. In analyzing the evidence, however, we do not overlook the fundamental law that makes the jury the judge of all questions of fact. They could have found many of the facts, single or in groups, in favor of the plaintiff without the right of interference; but when their finding is against the concurrence of such a weight of evidence, and inconsistent with so many contradictory circumstances, as to rebut the plaintiff's contention with proof of inherent improbability, such finding should not be permitted to stand.

From the facts and circumstances revealed by the evidence, we cannot avoid the conclusion that the plaintiff car turned into North Street within a few feet of the corner of the Dennett platform; that the defendant was so near, when he first saw the other car that he thought a collision imminent; that he immediately turned to his left, the wrong side, to avoid the impending accident; that the driver of the plaintiff car, inexperienced and obeying the instinct of his instructions, immediately turned to his right.

As seen in the statement of the case, the plaintiff and defendant were approaching a right angle corner of two streets, each to turn

into the street from which the other was coming.  Accordingly, applying the rule to this particular case we have no hesitancy in saying that it was the legal duty of the defendant to keep his right hand side of the road in approaching that corner, whether he could see the approach of the coming car or not; that it was equally the plain duty of the plaintiff to keep his right hand side of the road, whether he could see the approaching car or not.  If they could see each other, it was their duty to look, and only an emergency could excuse the one on the wrong side.  If they could not see each other, by reason of obstructions, then it was the legal duty of each to anticipate that the one car might be approaching to turn that corner at the moment the other might reach it; and, regardless of the presumption of legal speed, each should be on his side of the road, if he would avoid the charge of contributory negligence.

This accident happened on the plaintiff's side of the road.  We have said that when an accident happens by a collision of vehicles in the highway the one on the wrong side is prima facie guilty of negligence, unless something appears from the nature of the accident, or from extrinsic evidence, to overcome such guilt.  It may be rebutted by showing a case of emergency in which a party may be justified in taking the wrong side of the road.  And the exception proves the rule that one cannot take the wrong side deliberately when it is his duty to turn seasonably to the right, whether from actual observation, or legal anticipation, of an approaching car.  Do the law and the evidence rebut the presumption against the defendant in this case?  We think they do.

In case of imminent danger when two alternatives are presented, an exercise of intelligent and prudent judgment will excuse one from the charge of negligence, although the course taken may not prove to have been the safest or best.  *Larrabee* v. *Sewall*, 66 Maine, 376; *Skene* v. *Graham*, 114 Maine, 229.  In case of emergency a swerving of a traveler to the wrong side of the road is not negligence.  *Skene* v. *Graham*, 114 Maine, 229.  A driver is justified in turning to the left side of the road in order to avoid a collision.  *Clark* v. *Woap*, 159 App. Div. N. Y., 437; *McFern* v. *Gardiner*, 121 Mo. App. 1, S. W. A., 72.  "So, in an action of injury sustained when two automobiles collided in the highway, plaintiff, turning to the left, while acting as a reasonable man upon the honest belief that he would thereby avoid

a collision with defendant, was absolved from obeying the law of the road, and turning to the right." *Lloyd* v. *Calhoun,* 78 Wash., 438, 139 Pac., 231. We think this was just what happened. The emergency existed and the defendant had instantly to choose what course he would pursue to avoid it.

Whether guilty of contributory negligence in any other respect, is here immaterial, but we cannot say that the conduct of the defendant in turning to his left, did not comport with "that degree of care that an ordinarily prudent person might have exercised under the same circumstances." *Borders* v. *B. & M. Railroad,* 115 Maine, 210. Whatever may have been the culpability of the defendant, we think, the evidence is overwhelmning that the plaintiff car was guilty of contributory negligence.

*Motion sustained.*