HARRY S. COOMBS *vs.* HOWARD A. MACKLEY.

Androscoggin.    Opinion October 8, 1928.

336

*George C. Webber*, for plaintiff.
*Reginald W. Harris*,
*Perkins & Weeks*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

DUNN, J. This case comes here on a general motion by the plaintiff. The action was brought for damages to an automobile and personal injury from a collision between automobiles.

The accident happened on July 7, 1927, in broad daylight, on the paved highway in the town of Gray. On the authority of the diagram sent up with the printed case, the highway is slightly curved and runs north and south. The cement pavement is seventeen and three-fourths feet wide. Adjoining, on the east, apparently for the convenience of a lunch room and gas and oil station, is a graveled area defined by an interior curve which approximates more or less closely to an ellipse, one fixed point of which is about one hundred and seventy-five feet from the other, and the widest part of which, twenty-six feet, is directly in front of the lunch room. South of the graveled surface and near the vehicular highway is a strip of grass ground. On the west or opposite side of the

road is a shoulder of earth two and one-half feet wide, then a ditch of that width and twice as deep, a bean patch, a mail box, a telephone pole, and an apple tree.

Plaintiff's automobile was traveling south on the west side of the road. Defendant's automobile was coming from the opposite direction on the east side. Each was properly on the way in an unobstructed course. Thus far the facts are either conceded or undisputed. From this point the parties are at difference. Around the contradictory contentions of the opposed sides is evidence, or at least the jury could have found evidence, from several witnesses sustaining the one side or the other.

The jury could have found that, when from his own car the plaintiff first saw the car of the defendant, one hundred feet or more was intervening between the two cars; that the defendant's automobile then turned to the wrong side of the road and came head on towards the plaintiff's car at a rapid rate of speed until the collision occurred; this despite the efforts of the plaintiff to avoid a collision by turning his automobile so that one front wheel, if not both, was off the concrete in the direction of the ditch, where the plaintiff attested he stopped his automobile.

When a collision occurs between the vehicle of a person on the wrong side of the road and the vehicle of a person coming towards him, the presumption is that it was caused by the actionable fault of the person who was on the wrong side, but his presence on that side may be explained or justified.

The defendant maintains that, although unexplained the evidence against him might warrant a finding of negligence in the operation of his car, yet the jury was entirely justified in finding him not liable for violation of the law of the road, since that which he did was done in an emergency which no negligence of his created and in which he exercised care for the rights and safety of the plaintiff as a user of the way, comparable with what an ordinarily prudent and careful man would and does exercise under the same or similar circumstances.

In his testimony defendant stated that when he saw the plaintiff's automobile for the first time it was some three hundred feet distant from his own car. With defendant, as with plaintiff, when earlier in the trial he named one hundred feet, or at least one hundred feet,

as the distance between the two cars, the expression was one of personal judgment. The jury may have concluded that while the judgments of the witnesses did not go just alike, still with their judgments, as generally with the judgments of men and their watches, each believed his own.

Defendant swore his speed thirty miles an hour; that of the other had been given at twenty-five to thirty miles. Suddenly, without warning, there was testimony, an automobile, afterward referred to throughout the trial as the New Jersey car, shot out from behind plaintiff's car to cut in by it, and made at furious speed in course for and dangerously near to the defendant's car. Defendant evidenced that to avoid the New Jersey car, collision with which to him appeared only too imminent, he swerved to the left and when that car had passed defendant swung to return to his own side of the road as soon as practicable. If plaintiff's car, in front of which defendant turned, had stopped already, as had been testified, that defendant knew the fact or knew that it was stopping is not expressly shown. Before defendant's car was wholly back on its own or the east side of the road it collided with the plaintiff's car; the places of impact being the front left end of the bumper and mudguard on the latter, and the rear left door and mudgard of the other.

Was there an emergency, in the sense of the perplexing contingency or complication of circumstances, in the making or bringing together of which, as contended, no negligence of the defendant had to do? And given the emergency, did the defendant exercise ordinary or reasonable care; that of a man of average care and prudence so circumstanced being the standard required? On these propositions defendant had the burden of going forward with the evidence.

There was testimony, as has been noticed before, tending to establish the presence of the New Jersey car. Plaintiff's testimony, that he did not remember seeing a car between his own car and the defendant's, seemingly was regarded by the jury as of no avail, for plaintiff testified further that he had no occasion to look to his left until after the accident.

Defendant gave evidence that he did not stop his automobile because of the necessity, weighing with him as imperative, of saving

his property and himself from being injured by the New Jersey car. On his right, so the defendant testified, an automobile parked between the filling station and the road blocked traveling that way. On the left was the ditch, the patch of beans, the post and its mail box, the telephone pole, and the tree. The choice was made as best it could be under the situation that confronted me, continued the witness, to paraphrase his language, and once by the New Jersey car, in the perhaps sixty feet between my car and the plaintiff's (a distance in respect to which the parties seem to be substantially in accord), it was my hope by hurrying action and accelerating speed to weave my way back to the right of the center of the road, but the effort failed, through no fault of mine however.

The question of ordinary care, depending on answers to other questions, some of law and some of fact, is properly left to the jury with appropriate instructions. *Larrabee* v. *Sewall,* 66 Me., 376. When a person is required to act in an emergency and in a place of impending personal peril, the law will not declare that reasonable care demands that he must choose any particular one of the alternatives presented. In such cases the law invokes the judgment of a jury. *Blair* v. *Lewiston, etc., Railway,* 110 Me., 235. Unless in extreme cases and where the facts are undisputed, which of two alternatives an intelligent and prudent person traveling the highway should select as a mode of escape from collision the law will not say, but will send to the jury the question whether the traveler acts with ordinary care. *Larrabee* v. *Sewall,* supra. A traveler is not necessarily guilty of negligence because he turns to the left in an attempt to avoid another vehicle approaching from the opposite direction on the wrong side, with which a collision is threatened, but whether negligence exists depends upon the particular nature of the case. *Skene* v. *Graham,* 114 Me., 229.

The law as to drivers of motor vehicles is not different from that which governs other persons. Whether the conduct measured up to the standard of common caution for the driver of a motor vehicle under like conditions and circumstances was a question of fact. *Massie* v. *Barker,* 224 Mass., 420. Where an automobilist, to avoid striking a pedestrian, swerved to one side and struck a wagon, it was for the jury to determine whether his act was the result of an emergency, and whether, if there was an emergency, defendant act-

ed with becoming prudence, not necessarily with the same degree of deliberation and heed as in an affair of human life elsewhere but there. *Kosrofian* v. *Donnelly*, 117 Atl., 421 (R. I.). The driver is exonerated if the course which he takes in an emergency is one which an intelligent and prudent man would take. Whether he did this was a question for the jury. *Gravel* v. *Roberge*, 125 Me., 399. See, too, *Brown* v. *Rhoades*, 126 Me., 186; *Lammers* v. *Carstensen*, 191 N. W., 670 (Neb.); *Richards* v. *Rifenbery*, 233 Pac., 692 (Okla.); *Lee* v. *Donnelly*, 95 Vt., 121; *Donker* v. *Powers*, 202 N. W., 989 (Mich.); *Henderson* v. *Dimond*, 43 R. I., 60. When the facts are such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. *Larrabee* v. *Sewall*, supra; *Parker* v. *Smith*, 100 Vt., 130. That is this case.

*Motion overruled.*