THE ST. JOHNSBURY TRUCKING CO., INC.

*vs.*

JOSEPH ROLLINS

Cumberland.    Opinion, June 20, 1950.

*Wilfred A. Hay,*
*Charles A. Pomeroy,* for plaintiff.

*Verrill, Dana, Walker,*
*Philbrick & Whitehouse,* for defendant.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WIL-
LIAMSON, JJ.    (THAXTER, J., sat during argument, but
did not participate in consultation or opinion.)

MERRILL, J.    On exceptions.    This case was tried before
a jury at the November 1949 Term of the Superior Court

for Cumberland County. At the close of the evidence the presiding justice ordered a nonsuit. The case is before us on plaintiff's exceptions to this ruling.

The facts in the case were comparatively simple. In attempting to avoid collision with the defendant's truck which was stopped diagonally across the plaintiff's right-hand lane of a public highway and headed somewhat towards the plaintiff's approaching vehicle, the plaintiff's agent drove his tractor-trailer-milk-tank vehicle so far to his own right that although he was able to stop the same short of collision, the right-hand wheels of the trailer slipped over the concealed right-hand shoulder of the road and overturned the vehicle with the resulting damage complained of. The accident happened at about 5:30 in the afternoon of the second day of January, A. D., 1948. It was dark. It was snowing. Because of drifting snow the exact location of the shoulders of the road was obscured. The plaintiff's truck was proceeding at not exceeding twenty-five miles per hour. It was equipped with air brakes which, at that speed and on that road, could have been operated to stop the vehicle within a distance of fifty feet. It was equipped with riding lights, headlights and fog lights. At the time the accident occurred all these lights were on, the headlights being on low beam for the purpose of giving better visibility in the snowstorm. The accident happened just as the plaintiff's vehicle was entering a slight curve and just as it was leaving a straightway approximately one-fourth of a mile long.

The defendant's truck, which was painted a drab gray, as above stated, had stopped diagonally across the plaintiff's right-hand lane of the highway and was facing somewhat towards the plaintiff. The defendant's truck occupied the plaintiff's entire lane of the highway, which highway was about twenty feet wide, and left about eight feet of the highway at the plaintiff's left of the defendant's truck unoccupied.

As the nonsuit was granted at the close of the plaintiff's testimony, the defendant gave no explanation of the presence of his truck or his conduct. From the record it might be deduced that the defendant's truck was stopped for the purpose of pulling a third automobile, which had left the road on the plaintiff's right-hand side, back into the road. There was some evidence that a tow line extended from the defendant's truck to this automobile which was entirely outside of the road.

The defendant's truck was equipped with headlights which were in working order. Although the defendant's truck was thus situated either just within or at the beginning of a slight curve in the road, although it was after dark and was snowing, as the plaintiff's vehicle approached it, the defendant's truck was unlighted. Just as the plaintiff came within about one hundred fifty feet of the defendant's truck, the defendant being personally present, the headlights of the defendant's truck were suddenly turned on. As a result thereof, plaintiff was momentarily blinded. He stated that at first he thought the defendant's truck was approaching him on his own side of the highway. The plaintiff swerved to the right, slowed his vehicle, changed gears and brought the vehicle to a stop within ten feet of the defendant's truck. In doing so, the right-hand wheels of the trailer slipped over the shoulder and overturned the plaintiff's vehicle.

For the defendant to have his truck standing as it was, under the conditions then and there present, unlighted, when it was equipped with headlights in working condition, was a breach of the duty to use due and reasonable care which he owed to travelers approaching his truck from the direction in which the plaintiff was coming. A finding to the contrary by the jury could not be sustained. Such unexplained conduct on such a night and under such conditions was a wanton disregard of the rights and safety of the travelling public.

The defendant, however, urges that even if his conduct was negligent, such negligence was not the proximate cause of the plaintiff's damages because the plaintiff stopped his vehicle before actual collision with that of the defendant. This contention is without merit.

The defendant further urges that the record not only fails to establish that the plaintiff's agent was free from contributory negligence but conclusively shows that the plaintiff's damage ws proximately caused by the negligent management of its vehicle by its agent who was driving the same. In support of his contention the defendant cites the case of *Spang* v. *Cote,* 144 Me. 338, 68 Atl. (2nd) 823 as decisive.

In *Spang* v. *Cote* the plaintiff crashed into the rear end of an unlighted truck which was parked on his and its own side of the road. In that case, although the plaintiff claimed he was not blinded by the lights of a third approaching car which finally stopped, he did admit that his vision was reduced thereby. He admitted that he saw the lights of this approaching car at a distance of some eight hundred feet and that it came to a stop at least three or four hundred feet away from him. Although he admitted he was travelling at least forty miles per hour when he first observed the lights of the approaching car, and although he claimed he reduced his speed to about thirty miles per hour, the evidence clearly demonstrated that he did not reduce his speed to the extent to which he testified. In that case the plaintiff further claimed that he did not see the parked vehicle until he was within twenty-five feet of the same. In *Spang* v. *Cote* we held that on the evidence the plaintiff either negligently failed to discover the presence of the parked truck in the road or was driving his own car at such a rate of speed that he could not stop it within the range of his headlights and therefore crashed into the defendant's vehicle. In either event, we held he was guilty of contributory negligence which barred his right of action.

In the instant case the jury could well find that considering the condition of the night and the snowstorm, the plaintiff's agent driving at a rate of speed so that he could stop his vehicle within the range of his headlights, could not and should not have discovered the presence of the defendant's unlighted truck until its lights were turned on. This did not take place until the plaintiff's agent was within one hundred fifty feet of the defendant's unlighted truck. The plaintiff's agent not only could, but did stop his vehicle before collision with the defendant's truck. In this case the jury could have found that when the plaintiff's agent was suddenly and unexpectedly confronted with the lights of the defendant's truck, that they were directed along the road towards him at such an angle that at first he could not tell whether they came from an approaching or stationary car apparently on his side of the road. The jury further could have found that although the plaintiff was momentarily blinded by the defendant's lights, and that although the plaintiff could have stopped his car within a distance of fifty feet, he was faced with a sudden emergency created and caused by the negligent conduct of the defendant. The jury could have further found that the plaintiff's agent was presented with a choice which he must apparently instantaneously exercise to avoid an impending collision. His choice was between stopping his truck at the first possible moment, or swerving his truck to the right and attempting to so control it by either increasing or diminishing its speed, or ultimately stopping it, as the eventual unfolding of the situation might require. The inability to determine at the outset whether or not the defendant's truck was moving towards him or was stationary might well be an important factor in making such choice. He did all that was necessary to avoid collision with the defendant's truck. The jury could have further found that the damage was due to the fact that in seeking to avoid what he may well have reasonably believed was the threat of an imminent collision, a situation created by the defendant's negligence, he pulled

what proved to be too far to the right and that the wheels of the truck slipped over the concealed edge of the shoulder of the road and thus turned over.

It may well be that, in retrospect, it is demonstrable that had the plaintiff's agent held his course, brought his vehicle to a dead stop at the first *possible* moment there would have been neither collision nor upset. This, however, is deducible only by the use of "hindsight." But "hindsight" is not available to a person faced with an emergency with which he is suddenly confronted and which requires instantaneous action upon his part. He must act promptly, taking into consideration the circumstances as they then present themselves.

It is true that even though he was confronted by a sudden emergency created by the defendant's negligence, the plaintiff's agent was required to exercise ordinary care, that is, the care that the ordinarily prudent person would exercise under like circumstances, so that no want of such care on his part contributed to the damage suffered by the plaintiff. The burden of proof to establish this proposition was upon the plaintiff. It is to be remembered, however, that in such case the sudden emergency created by the defendant's negligence is one of the existing circumstances which must be considered in determining whether or not the plaintiff's agent was guilty of contributory negligence. While the standard of care required is that which would be exercised by the ordinarily prudent person, it is only that degree of care which such person would use under *the same circumstances.*

If one uses that degree of care which an ordinarily prudent person would have used under the same circumstances and in the same emergency, the emergency having been created by the negligence of the other, and without any prior negligence on his part contributing to produce the emergency, negligence cannot be predicated on such conduct. See *Byron* v. *O'Connor,* 130 Me. 90 and *Coombs* v.

*Mackley*, 127 Me. 335. This principle of law is applicable whether conduct in issue be that of the plaintiff or the defendant. Under the circumstances disclosed by the evidence in this case, the governing rule is authoritatively stated in *Coombs* v. *Mackley*, 127 Me. 335 at 339 as follows:

"The question of ordinary care, depending on answers to other questions, some of law and some of fact, is properly left to the jury with appropriate instructions. *Larrabee* v. *Sewall*, 66 Me. 376. When a person is required to act in an emergency and in a place of impending personal peril, the law will not declare that reasonable care demands that he must choose any particular one of the alternatives presented. In such cases the law invokes the judgment of a jury. *Blair* v. *Lewiston, etc., Railway*, 110 Me. 235. Unless in extreme cases and where the facts are undisputed, which of two alternatives an intelligent and prudent person traveling the highway should select as a mode of escape from collision the law will not say, but will send to the jury the question whether the traveler acts with ordinary care. *Larrabee* v. *Sewall*, supra."

The driver of an automobile faced with a sudden emergency and possible impending collision caused by the negligence of the defendant is not necessarily guilty of contributory negligence because he turns so far to the right in attempting to avoid such collision that his wheels slip off the shoulder of the road, concealed by drifting snow, and overturns his vehicle. The determination of whether or not such action is that of an ordinarily prudent man under like circumstances is a question of fact which should be left to the jury. An affirmative answer would be justifiable. As the jury could have found that these circumstances existed in this case, it could have found that the action of the plaintiff's agent was that of a reasonably prudent man in like situation and that no negligence on his part contributed to the damage suffered by the plaintiff. As heretofore shown, the jury would have been well justified in finding that the

defendant was negligent and that his negligence was the proximate cause of the plaintiff's damage.

This case should not have been taken from the jury but should have been submitted to it for decision. There was evidence from which the jury could well find that the plaintiff had sustained the burden of proving that the defendant's negligence was the proximate cause of the damage it suffered, and that no negligence on its part or that of its agent was a contributing proximate cause thereof. Under such circumstances, to order a nonsuit was legal error and the exceptions to such order must be sustained.

*Exceptions sustained.*