436

Frank J. LYONS
v.
UNITED STATES of America.
Civ. No. 940.

United States District Court
D. Maine,
Northern Division.
Jan. 7, 1958.

Gerald E. Rudman, Bangor, Me., for plaintiff.

Peter Mills, U. S. Atty., Portland, Me., Francis E. Day, Asst., U. S. Atty., for defendant.

GIGNOUX, District Judge.

This is an action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). Plaintiff, a resident of Bangor, Maine, sues here in the judicial district where he resides and the act complained of occurred, 28 U.S.C.A. § 1402(b). The case was tried to the court.

The following opinion contains the findings and conclusions required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

1. The facts are as follows: On January 11, 1956, the plaintiff, Frank J. Lyons, was the owner and operator of a Pontiac station wagon proceeding in an easterly direction on U. S. Route No. 1 between Bangor and Machias, Maine. At the same time a United States Air Force one-and-one-half-ton International Truck, operated by one Harold Worcester, was proceeding on the same highway in a westerly direction. The Lyons station wagon and the Air Force truck collided in the town of Milbridge, Maine.

The truck was carrying a generator about nine feet long, five feet wide, and five feet high. The station wagon was loaded with merchandise (drug sundries). There were no passengers in either vehicle.

The highway on which the accident occurred is a tarred road about 19 feet 7 inches wide. It has a high crown. Its shoulders are approximately six feet wide on either side. In the vicinity of the accident the highway is flanked on both sides by ditches approximately two feet deep, and beyond the ditches it is edged by stumps and second growth. For over a mile in the general area of the accident the highway is a straight road and marked as a passing zone. A driver's vision from either direction is virtually unobstructed for about one mile measured from three tenths of a mile west of the scene of the accident to seven tenths of a mile east of it. There is a slight depression or "dip" in the road approximately two tenths of a mile east of the accident scene, but the total disabling effect on drivers' vision is so negligible as to be irrelevant to this decision.

The weather on the day of the accident was overcast and damp. The pavement was wet from rain, which had ceased to

fall some time prior to the accident. There was neither snow nor ice on the surface or the shoulders of the highway, or on the immediately adjacent land. Intermittent gusts of wind, of moderate velocity, were blowing from a northeasterly direction. The shoulders of the highway were surfaced by gravel but were soft and muddy at the time of the accident.

The only evidence presented as to the events immediately preceding the accident was the testimony of Lyons himself, and since his testimony was not contradicted, it must be accepted by the Court. In substance, Lyons stated: that he first observed the truck when it was approximately one half mile distant from him; that both vehicles were traveling at approximately 40 to 45 miles per hour; that the truck was on its left hand side of the road headed directly toward him; that he immediately began blowing his horn in continuous short blasts, removed his foot from the accelerator and began slowing his vehicle; that he began gradual braking when he was about 300 feet away from the truck; that when only 50 or 60 feet separated the vehicles, he realized the truck was not going to return to its own side of the road; that he then turned his vehicle to his left; that at approximately the same moment the truck started turning to its right, and the left front of the truck and the right front of the station wagon collided.

Lyons further testified that when he first observed the truck, he "recognized a potential danger" at that time, but did not feel that it had yet become an emergency because "usually when you blow a horn at a driver on the wrong side of the road he removes himself, which I expected him to do"; that he recognized the fact it had become an emergency "at the moment I made up my mind to turn to the left"; that he had predetermined the condition of the highway and the ditch on his right side and "felt that turning to the right would result in a catastrophe" so that he immediately turned to the left; and that he did not attempt to stop his car at that time because "it is almost instinctive if somebody is aiming a lethal blow at you, you don't stop. You move ahead one way or another way to avoid him".

The position of the vehicles after the accident is undisputed. They were roughly parallel one to another, the truck east of the station wagon. The right front wheels of both vehicles were on the highway's northerly edge, and their rear wheels were on or over the center line.

A skid mark traceable to the *right* rear wheel of the truck ran for a distance of 53 feet. It began at a point 3 feet south of the center line (on Lyons' side of the highway), continued for 24 feet 5 inches, then, crossing the center line, continued for 28 feet 7 inches, and ended 3 feet north of the center line (on the truck's side of the highway). In brief, the truck was clearly entirely on Lyons' side of the road at the time the skid began, was returning to its own side of the road, and at the time the collision occurred was in the approximate center of the highway.

There were no tire marks traceable to the Lyons vehicle.

2. It was necessary that Harold Worcester be shown to have been an employee of the Government acting within the scope of his employment, 28 U.S.C.A. § 1346(b), and not engaged in a discretionary function at the time of the accident. 28 U.S.C.A. § 2680(a), as interpreted in Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427. This was alleged in the complaint and admitted in the answer.

3. Section 83 of Chapter 22 of Revised Statutes of Maine, 1954, contains a "rule of the road" providing that "when persons traveling with a team are approaching to meet on a way, they shall seasonably turn to the right of the middle of the traveled part of it so that they can pass each other without interference". This rule, though stated in terms of "teams", is equally applicable to motor vehicles. American Mutual Liability Insurance Co. v. Witham, 1925, 124 Me. 240, 241, 127 A. 719; Bragdon v. Kellogg, 1919, 118 Me. 42, 44, 105 A.

433, 434, 6 A.L.R. 669. And the Maine court has frequently held that the statutory requirement that persons approaching to meet on a way shall "seasonably turn to the right of the middle of the traveled part of it" is mandatory; that the one who fails to obey this mandate is prima facie guilty of negligence and must sustain the burden of excusing his presence upon the wrong side of the road; and that the fact a party was on the left side of the road at the time of a collision is strong evidence of negligence, and unexplained and uncontrolled, is not only strong but conclusive evidence of negligence. Morin v. Carney, 1933, 132 Me. 25, 28, 165 A. 166; American Mutual Liability Insurance Co. v. Witham, supra; Bragdon v. Kellogg, supra; Neal v. Rendall, 1903, 98 Me. 69, 73, 56 A. 209, 63 L.R.A. 668.

In the instant case plaintiff and defendant's agent were "approaching to meet". The undisputed evidence indicates that at the time plaintiff first saw defendant's truck, it was entirely on its left-hand side of the road and that it had not wholly returned to its right-hand side of the road at the time of the collision. Defendant's agent was thus clearly in violation of the statutory rule of the road requiring him to "seasonably turn" to his right to avoid a collision and to yield plaintiff's side of the road to him without delay. This he did not do, and defendant offered no explanation whatsoever of its agent's failure to do so. The authorities hereinabove cited establish that this unexplained presence of defendant's truck on its left-hand side of the road must be conclusive evidence of defendant's negligence. More specifically, it constituted negligence in law.

4. Negligence of the defendant having been established, it becomes necessary to determine whether such negligence was a proximate or legal cause of the injuries produced. In this case defendant's agent was on the wrong side of the highway. He was there in violation of a law enacted for the protection and safety of travelers, including plaintiff, and to prevent collisions of the type which here occurred. But for the wrongful act of defendant's agent, there would have been no collision and no injury. The resulting collision and injuries were a consequence which could have been reasonably anticipated. The negligence of defendant's agent was, at the least, a contributory factor in bringing about the collision and injuries and is, therefore, actionable. See Neal v. Rendall, supra, 98 Me. 74, 56 A. 211.

5. There yet remains the question of contributory negligence. Defendant contends that even if its agent was negligent in his operation of the truck, his negligence was not the sole proximate cause of the accident since plaintiff had ample opportunity to observe the truck's dangerous position on the highway and failed to act as a reasonable, prudent operator would have acted under the same circumstances. Defendant argues that plaintiff was thus guilty of contributory negligence, without which the accident would not have occurred, in not recognizing that an emergency existed as soon as he saw defendant's truck approaching on the wrong side of the road and in not taking immediate steps to avoid a collision by stopping his automobile and turning off the road to his right.

Under Maine law when the operator of a motor vehicle is confronted with a sudden emergency not resulting from his own negligence, he is not held to the same accuracy of judgment as is required under ordinary circumstances; and if he pursues a course of action such as a person of ordinary prudence placed in a like position might have chosen, he is not guilty of negligence even though, in retrospect, he may not have adopted the wisest course. St. Johnsbury Trucking Co., Inc., v. Rollins, 1950, 145 Me. 217, 74 A.2d 465, 21 A.L.R.2d 88; Skene v. Graham, 1915, 114 Me. 229, 95 A. 950; accord: Coombs v. Mackley, 1928, 127 Me. 335, 143 A. 261; Larrabee v. Sewall, 1877, 66 Me. 376. If the operator uses that degree of care which an ordinarily prudent person would have used under the same circumstances and in the same emergency, negligence will not be pred-

icated on such conduct. St. Johnsbury Trucking Co., Inc., v. Rollins, supra; Coombs v. Mackley, supra. And in case of emergency a turn to the left is not necessarily negligent even though a collision results; a driver is justified in turning to the left side of the road in order to avoid a collision. Tabbut v. Noyes, 1953, 149 Me. 388, 101 A.2d 867; Coombs v. Mackley, supra; Bragdon v. Kellogg, 1919, 118 Me. 42, 43, 50, 105 A. 433, 6 A.L.R. 669.

The applicable law under the circumstances of this case was recently and authoritatively restated by the Maine court in St. Johnsbury Trucking Co., Inc., v. Rollins, supra, a case strikingly similar to the case at bar. In an attempt to avoid a collision with the defendant's truck, which was stopped diagonally across the plaintiff's right-hand lane of a public highway and headed somewhat toward the plaintiff's vehicle, the plaintiff drove far to the right to avoid a collision between the vehicles, in which regard he was successful but slipped over the shoulder of the road and overturned. The defendant moved for a non-suit at the close of the plaintiff's testimony and accordingly defendant gave no explanation of the presence of the truck or his conduct. The defendant contended that even if his conduct was negligent, such negligence was not the proximate cause of the accident. The trial justice ordered a non-suit. The Supreme Judicial Court of Maine in an opinion by Justice Merrill sustained the exceptions. The Court said (145 Me. at page 222, 74 A. 2d at page 468):

"It may well be that, in retrospect, it is demonstrable that had the plaintiff's agent held his course, brought his vehicle to a dead stop at the first *possible* moment there would have been neither collision nor upset. This, however, is deducible only by the use of 'hindsight'. But 'hindsight' is not available to a person faced with an emergency with which he is suddenly confronted and which requires instantaneous action upon his part. · He must act promptly, taking into consideration the circumstances as they then present themselves.

"It is true that even though he was confronted by a sudden emergency created by the defendant's negligence, the plaintiff's agent was required to exercise ordinary care, that is, the care that the ordinarily prudent person would exercise under like circumstances, so that no want of such care on his part contributed to the damage suffered by the plaintiff. The burden of proof to establish this proposition was upon the plaintiff. It is to be remembered, however, that in such case the sudden emergency created by the defendant's negligence is one of the existing circumstances which must be considered in determining whether or not the plaintiff's agent was guilty of contributory negligence. While the standard of care required is that which would be exercised by the ordinarily prudent person, it is only that degree of care which such person would use under *the same circumstances*."

Arguably, plaintiff in the instant case might have attempted to stop or to turn right when he first saw defendant's truck one-half mile away, approaching him on the wrong side of the road. He did not do so, relying on his expectation that defendant's agent would return to his own right side of the road in sufficient time to avoid a collision. As previously indicated, he recognized a potential danger at that time, but did not feel it had yet become an emergency. It is recognized that what plaintiff thought, what he did and what he reasoned are not the test in this case. The controlling question is whether under all the circumstances which then existed, including the emergency created by the negligence of defendant's agent, plaintiff's actions were those of a reasonable, prudent driver. As stated by the Maine Court in the case of Gravel v. Roberge, 1926, 125 Me. 399, at page 400, 134 A. 375;

"The sudden emergency doctrine is not an exception to the general rule.

"The test question is whether the defendant acted as an ordinarily prudent and careful man would have done under the same circumstances. The emergency is one of the circumstances contemplated by the rule. If the defendant's course was one that an ordinarily prudent and careful driver put in his place, might have taken, he is relieved from liability, otherwise not. His own judgment or impulse is not in any situation, emergent or otherwise, the law's criterion. The driver is exonerated if the course which he takes in an emergency is one 'which might fairly be chosen by an intelligent and prudent person.' Skene v. Graham, 114 Me. [229], 234, 95 A. 950."

While the law imposes a duty upon the operator of a motor vehicle to exercise due care and caution for his own safety, he has a right to rely to a great extent upon the prudence, care and compliance with the law of other drivers and may assume, until the contrary appears, that approaching automobiles will be driven carefully. Davis v. Simpson, 1941, 138 Me. 137, 145, 23 A.2d 320; cf. Sanborn v. Stone, 1954, 149 Me. 429, 434, 103 A.2d 101.

Under all the circumstances which existed in this case, this Court cannot conclude that a reasonable, prudent driver would necessarily have recognized an emergency at the time plaintiff first saw defendant's truck and have attempted to stop his vehicle and to turn off the road at that time. Nor can this Court conclude that plaintiff's actions, at the time he did recognize an emergency, were not the actions of a reasonable, prudent driver under the same circumstances. As previously indicated, plaintiff's choice may well be deemed unwise in retrospect, but this Court cannot find that his actions, under the circumstances, were so inconsistent with those of a reasonably prudent person as to bar his recovery.

6. Plaintiff's medical and hospital expenses were stipulated to be $159. Damage to plaintiff's automobile was established at $2,025. Transportation expenses from the scene of the accident to plaintiff's home were fixed at $28.75. Damage to plaintiff's merchandise, clothing and suitcase and loss of a pen and pencil were agreed to be $320.95, making the total stipulated damages $2,533.70. In addition, plaintiff testified that he was unable to work for nine weeks following the accident at an average earnings loss of $200 per week and that he suffered a further loss of earnings, in an indeterminate amount, resulting from a reduced volume of sales following his return to work. Plaintiff further testified to the loss of a watch, which he valued at $200. Plaintiff's testimony in this respect was uncorroborated.

Medical testimony indicated that no permanent disability resulted from the accident. Physical examination revealed that plaintiff had received a blow on the head, and bruises on the left hand and right knee. Although no objective symptoms were found, subjective symptoms as related to examining physicians tended to indicate that as a result of the collision plaintiff received a moderately severe cerebral concussion, resulting in a case of true vertigo and recurring severe headaches and spells of dizziness for an extended period following the accident. These have steadily decreased in intensity and frequency, and the prognosis is gradual cessation.

The Court finds that plaintiff is entitled to recover the stipulated damages of $2,533.70, and in addition is entitled to recover the sum of $5,000 for loss of earnings, loss of watch, and his physical injuries, including pain and suffering, resulting from the accident.

Judgment will be entered for plaintiff for the total amount of $7,533.70, plus costs.