KENNETH CARVER

AND

EDITH CARVER

*vs.*

DONALD N. LAVIGNE

Cumberland County.   December 4, 1964.

*Berman, Berman, Wernick & Flaherty,*
    by: *John J. Flaherty, Esq.,* for Plaintiffs.

*Julian G. Hubbard, Esq.,* for Defendant.

SITTING: WILLIAMSON, C. J.; WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SULLIVAN, J.   As a sequence of a collision of motor vehicles the plaintiff wife sought compensation from the defendant for personal injuries and for loss of wages and her husband claimed reimbursement for damage to an automobile and for his losses attendant upon his wife's inflicted disabilities.   There was a conjoined trial.   At the close of all the evidence the defendant moved for directed verdicts.   His motions were overruled.   The jury awarded plaintiffs'

verdicts. Defendant moved for judgments *n. o. v.* and for new trials. *Rule 50, M. R. C. P.,* 155 Me. 548. The presiding justice ordered conditionally a remittitur by the plaintiff wife of a substantial portion of her awarded damages and she assented to such a reduction. In effect the motions were otherwise denied. *DeBlois* v. *Dunkling,* 145 Me. 197, 202. Defendant appeals from such rulings.

Defendant asserts 8 points on appeal. Condensed they are as follows:

1. The Trial Court erred in its refusal to grant defendant's motion for a mistrial when the jury during the trial was made aware that the defendant at the time of the accident had liability insurance coverage on his motor vehicle.

2. After denying a mistrial the court erred in instructing the jury in open court to disregard the fact of defendant's insurance coverage and thereby further advised of and emphasized the existence of such coverage, to the defendant's prejudice.

3. On all credible evidence, testimonial and real, the defendant was entitled to a directed verdict in that the plaintiff wife by her own admissions and statements had established her own contributory negligence.

4. The jury through bias and prejudice erred in disregarding the entire evidence of the state trooper, the only disinterested witness in the case.

"5. That the damages were excessive based on the original injuries admitted to by the Plaintiff (wife) to her family doctor, being inconsequential in extent and nature."

6. The court erred in refusing to grant defendant's timely motion for a directed verdict.

7. The court erred in that the verdict of the plaintiff wife even as diminished by the remittitur still contains the

item of $644 for loss of her wages while the same item is improperly included in the husband's award and double damage obtains.

8. The court erred in denying and in denying without hearing a motion of defendant to include in the Law Court record a photograph of a blackboard diagram in chalk with posted items of damage which had been utilized by all parties at the trial for evidential purposes and jury argument.

At the trial a medical expert testified at the call of the defendant. During cross examination by plaintiffs' counsel the following interlocution ensued resulting in the judicial action here reported:

"Q. Dr. Monaghan, is that the report of Dr. Branson to which you make reference?

"A. That is not the exact one but it was a photocopy.

"Q. Were you provided a copy of this report by Mr. Hubbard?

"A. I don't believe I saw this particular report. I saw the little insurance form and also a letter that Dr. Branson had written to the Insurance Company saying that Mrs. Carver was not getting better and she should be seen by an orthopedic surgeon, but basically it is the same as that.

"Mr. Hubbard: I move.

"The Court: The jury will go to their jury room at this time. Do not discuss the case amongst yourselves at this time.

Recess.

"Mr. Hubbard: In view of the fact that the defendant was covered by insurance was brought out in testimony in cross-examination by the Plaintiffs' counsel of the Doctor appearing in behalf of the defendant, the Defendant moves for a mistrial in the case at this time.

"The Court: Motion denied. I find that the remark by the Doctor was made without intention to prejudice anyone, and the Court finds that there was no prejudice whatsoever conveyed to the jury by reason of the Doctor's remark.

"Mr. Hubbard: Note my exceptions.

"The Court: Your objections are noted.

(The jury then returned to the courtroom and the following proceedings took place in the presence of the jury:)

"The Court: At this time, Members of the Jury, the Court strikes out from the evidence the statements of the Doctor in relation to any insurance. You are to disregard completely that the word 'insurance' was mentioned by the Doctor, or 'Insurance Company.' Disregard that completely because that is absolutely immaterial to the case. You are not to consider it under any circumstances in order to comply with your oath as jurors.

"Mr. Hubbard: Your Honor, at this time - - - -

"The Court: I am sorry. The question of insurance, whether or not there is some or is not, is absolutely immaterial to this case or to any case. You may proceed.

"Mr. Hubbard: May I have a conference at the bench?

"(Bench Conference)."

This court said:

"- - - - insurance in negligence cases is immaterial, prejudicial, and not admissible."
*Deschaine* v. *Deschaine*, 153 Me. 401, 407.

In the case at bar the intimation of potentially detrimental insurance coverage was unpredictably elicited from an undoubtedly guileless witness by a question from plain-

tiffs' counsel which provided no foreseeable occasion for the wordy response given by the witness. There was no culpability of counsel or of parties.

The presiding justice, the responsible trial administrator possessing all proper discretionary authority, was most favorably advantaged to estimate the effect of the witness's inapt disclosure upon the jury consciousness and to weigh the practicable prospect of neutralizing and counteracting any subsisting prejudice. The justice formed his serious conclusion. He condemned the improper testimony as immaterial. He struck it from the evidence. He commanded the jury as an oath bound obligation to prescind from such testimony. We cannot with reason say that the justice exceeded his discretion.

This court said in *Beaulieu* v. *Tremblay*, 130 Me. 51, 55:

> "The single exception reserved in each case is directed to the refusal of the presiding justice to order a mistrial upon the introduction of evidence of the fact that the defendant was insured. This exception can not be sustained. The discretionary power of the presiding justice to attempt to correct the error in his charge to the jury and not order a mistrial does not appear to have been abused."

By appeal point 2 the defendant protests that the presiding justice by his very conduct in outlawing and countervailing the testimony of liability insurance coverage in reality only succeeded thereby in accentuating the fact of such insurance to the defendant's prejudice. This assertion is a variation or readaptation of defendant's point 1 and a persistent expression of defendant's contention that the trial justice abused his discretion in not granting mistrials. There is no need to amplify our previous consideration of the critical evidential problem before the justice and his legitimate resolution of it.

420

Appeal points 3 and 6 impute error to the presiding justice in his refusal to grant directed verdicts to the defendant. In effect these two protests charge that the pertinent evidence viewed in the light most favorable to the plaintiffs fails to prove the negligence of the defendant and the reasonable care of the plaintiff wife.

> "It is true, - - - - that a verdict should not have been ordered, if, giving to the plaintiffs the most favorable view of the facts and of every justifiable inference to be drawn from them, different conclusions as to the defendant's negligence could fairly have been drawn by different minds."
> 
> *Andreu* v. *Wellman,* 144 Me. 36, 38.

In the record of this case there is contained evidence susceptible of jury credence and as believed plenteous in kind and in amount to sustain plaintiffs' verdicts. The plaintiff wife related that on a fair day and a dry road she operated a car slowly over a through way and into an intersection. Contemporaneously the defendant to her right and upon a confluent road slowly and with lessening speed approached the intersection and passed a contraposed stop sign without halting. R. S., c. 22, § 89 as amended through 1959; *Tinker* v. *Trevett,* 155 Me. 426, 428. The plaintiff wife had kept the nearing defendant in view and notice and believed because of the latter's waning speed and the stop sign that the defendant was coming to a standstill. At the intersection suddenly and without apparent reason the defendant accelerated his car to a bursting speed and drove it into the vehicle operated by the plaintiff wife. In the sudden peril (*St. Johnsbury Trucking Co.* v. *Rollins,* 145 Me. 217, 223) the plaintiff wife had alertly but in vain turned to her left in the hope that the defendant might turn to his left and pass to the rear of the car driven by the plaintiff wife. The plaintiff wife became injured by the impact and the automobile she drove was damaged.

True the foregoing ascription and the evidence in support of it were controverted sharply and in detail by the defendant but contain no element which intrinsically or extrinsically render them unfit as a matter of law for factual accreditation by the jury. The credibility of witnesses and the weight of their testimony under such circumstances were a jury prerogative, *Hatch* v. *Dutch,* 113 Me. 405, 411.

Appeal point 4 avers that the jury in bias and prejudice disregarded all the testimony of the state trooper, a disinterested witness who testified as to conversations of the plaintiff wife and defendant held at the scene of the accident. To validate this point the burden has devolved upon the defendant. The mere rendition of plaintiffs' verdicts will not suffice to demonstrate that the jury were biased or prejudiced or that they ignored all of the state trooper's testimony. The jury are the judges of credibility which is not restricted to veracity but relates also to such possible factors as powers and opportunity for observation, recollection and accuracy of observation, etc. The collision occurred some three years and seven months before the trial. Nothing appears in the case record to justify the Law Court in substituting its judgment for that of the jury in this particular.

Appeal point 5 imports that the plaintiff wife should have been restricted in her recovery of damages to compensation for such injuries as she had been aware of and had recited to her family doctor who had treated her in six office calls during the first five months of her disability. In this case there is much and multiple medical testimony. From evidence the jury were warranted in concluding that the plaintiff wife had sustained injuries of a slowly manifesting and assertive nature and difficult of correct referral. The jury were not in this case confined to the personal and early laical diagnosis by the plaintiff wife of her injuries.

Appeal point 7 insists that the compensatory item of $644 for loss of wages of the plaintiff wife had been retained in her judicially diminished verdict and is also by duplication contained in the verdict of her husband. We have been unable from the record to verify or confirm such contention that his wife's lost wages were assessed in the husband's verdict. The instructions to the jury from the presiding justice are not a part of the record. The instructions were therefore presumably proper and plenary.

Appeal point 8 is a remonstrance that defendant is aggrieved by the refusal of the presiding justice to admit to the appeal record a photograph of a chalked, blackboard diagram comprising a freehand outline of the locus of the accident and the position of the colliding cars and some numerical details or data of claimed damage items. Each counsel and several witnesses at trial had resorted to and availed themselves of the plan. Before jury withdrawal neither counsel had requested that the blackboard or the photograph accompany the jury into its deliberation. The faint and unlabelled figures are not completely discernible in the photograph and are not suitable or adequate for use as an exhibit in this appeal court. The blackboard diagram and indistinct numerical figures are not usefully and intelligibly correlated or interrelated with the trial transcript or record. There was no abuse of discretion in the ruling of the trial justice.

The verdict for the plaintiff husband awarded him $3500, presumably $225 for unquestioned damage to the automobile, some $1300 plus for medical and hospital expenses and somewhat less than $2000 for loss of consortium past and conceivably future. There was evidence of the wife's disability and suffering for more than three yars and of prospective distress. The presiding justice upon defendant motion for a new trial reasonably adjudged that the amount

of damage assessed could not be deemed excessive under the circumstances.

For the plaintiff wife the jury resolved the damages at $20,000 inferentially calculated as $644 for loss of wages and $19,356 for past and anticipated future pain and suffering. There was evidence of constant pain endured by the wife through the intervening months from May, 1960 until necessitated surgery was undergone with admittedly beneficial consequences in January, 1962. At the time of trial the wife had not experienced complete relief and there was a prognosis of chronic future distress in some degree.

The presiding justice ordered a remittitur of all save $10,644 of the jury award. In his rulings upon defendant's motion for a new trial because of excessive damages the justice expressed a conviction that the jury had rendered an objectively proper verdict as to liability and his opinion that the fortuitous injection of the element of liability insurance coverage into the trial had not occasioned an inflation of damages assessed but that the jury had mistakenly evaluated "the reasonable equivalent, money-wise, of pain and suffering." The jury award as reduced by the justice does not appear to be excessive or inadequate.

As this court stated in *Garmong* v. *Henderson*, 114 Me. 75, 90, there have been trials wherein:

"- - - - Even the amount of damages awarded, considering all the circumstances, furnishes manifest evidence that the real merits of the case have not been properly passed upon by the jury. - - - - "

In the case at bar there are satisfactory evidences that the jury rendered a tenable and defensible verdict save for its compensatory over estimation of the wife's damage, an excess opportunely corrected by the presiding justice.

The defendant has succeeded in demonstrating no perceptible grievance. In the decided case of *London* v. *Smart*, 127 Me. 377, 378, a judicious criterion was approved:

"More than a hundred years ago the court of highest authority in this country held that upon a motion for a new trial after verdict the whole evidence is to be examined with minute care, and the inferences which the jury might properly draw from it are adopted by the court. If therefore upon the whole case justice has been done between the parties and the verdict is substantially right no new trial will be granted although there may have been some mistakes committed in the trial. The granting of a new trial is not a matter of absolute right in the party but rests in the judgment of the court and is to be granted only when it is in furtherance of substantial justice, *M'Lannaham v. Universal Insurance Company*, 1 Peters, 170. This is still the law of the land."

The mandate shall be:

> *Appeals denied:*
>
> *Judgment for Kenneth Carver on the verdict, affirmed.*
>
> *Judgment for Edith Carver on the verdict as diminished by the remittitur to the sum of $10,644, affirmed.*